In re Arbitration between **LOCAL 1416,
INTERNATIONAL ASSOCIATION OF
MACHINISTS, AFL–CIO,** Petitioner,

and

**JOSTENS, INC.,** Respondent.

No. 1–65–Civ. 370.

United States District Court
D. Minnesota,
First Division.

Jan. 31, 1966.

Willard L. Converse and Peterson, Bell & Converse, St. Paul, Minn., for petitioner.

Curtis L. Roy and Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for respondent.

LARSON, District Judge.

Petitioner Local 1416, International Association of Machinists, (Union) instituted this proceeding in a Minnesota district court pursuant to the Uniform Arbitration Act, Minnesota Statutes § 572.09 (Minnesota Act).[1] By virtue of a collective bargaining agreement effective from July 1, 1964, to June 30, 1966, Union is the bargaining agent for production and maintenance employees at respondent's plant in Owatonna, Minnesota. Respondent Jostens, Inc., is engaged in the manufacture of scholastic jewelry and awards, while Josten Engraving Company manufactures graduation announcements, greeting cards, and other graphic arts products. They are both parties to the contract, but the present dispute involves an employee engaged in the operations conducted by Jostens, Inc. In the State court action Union sought an Order compelling Jostens, Inc., (Company) to submit to arbitration a dispute arising out of an alleged violation of the contract. The claimed breach is the assignment of bargaining unit production work to a supervisory employee, Terrance Tuttle.

Company caused the suit to be removed to this Court, based on the jurisdiction established by Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 (Labor Act). Union then placed the action on the special term calendar and moved for an Order compelling arbitration, which was resisted by Company on the grounds that the motion procedure outlined in the Minnesota Act is inapplicable to actions under § 301 of the Labor Act. Company's position is that Rule 81, Fed.R.Civ.Proc., requires that Federal procedure govern all proceedings subsequent to removal. The first hearing on December 27, 1965, was continued, allowing Company time to answer the application and motion. In its answer Company alleges that the Tuttle dispute is not subject to the arbitration clause of the contract. By way of counterclaim Company seeks reformation of that clause to specifically exclude from its coverage matters relating to the job duties of foremen and supervisory employees. Alternatively, Company seeks a judgment declaratory of the parties' rights under the contract. A second hearing was held on January 14, 1966.

*Procedural Issues—*

Company maintains that Union's motion must be treated as one for summary judgment, to be tested by the standards of Rule 56 rather than by the standards of the Minnesota Act. Union argues that State law, where not inconsistent with

1. "(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed wtih arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."
Section 572.23, Minnesota Statutes, provides:
" * * * [A]n application to the court under this chapter shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions."

Federal labor policy, may be assimilated or adopted by the Federal courts.

■ The starting point of the inquiry is the proposition, established in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957), that Federal law governs in actions brought under § 301 of the Labor Act. In that case the Supreme Court held that § 301 is not merely jurisdictional, but that it authorizes, and requires, Federal courts to fashion a body of Federal law for the enforcement of collective bargaining agreements, including the specific performance of arbitration clauses. While the *Lincoln Mills* case is clear in its direction as to the substantive law governing the present case, it did not suggest the proper procedure by which issues relating to the enforcement of arbitration clauses may be raised. Several alternatives are possible. One is the United States Arbitration Act, Title 9, U.S.C. (Federal Act). Another is State statutory procedure, here the Minnesota Act. Of course, there is the ordinary civil action, or an action for declaratory judgment under 28 U.S.C. § 2201. In addition, there are the various motions authorized by the Federal Rules of Civil Procedure, including a Rule 56 motion for summary judgment.

In Section 4, the Federal Act contains the following:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed

in the manner provided for in such agreement. * * * "

Section 6 of the Federal Act provides as follows:

"Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."

If the Federal Act is applicable to collective bargaining contracts, the sections cited above would seem to authorize the type of petition and motion procedure used by Union. However, § 1 of the Federal Act excludes from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Conflicting interpretations have been given to this section, some courts concluding that it excludes collective bargaining contracts from the scope of the Act, while other courts have reached the opposite result.[2] The Fifth Circuit, in the *Lincoln Mills* case, decided that such contracts are not covered by the Federal Act. The majority of the Supreme Court did not explicitly review that portion of the Fifth Circuit's ruling, and in fact made no reference at all to the Federal Act. Mr. Justice Frankfurter, in dissent, suggested that by silence the majority implicitly ruled the Act inapplicable to collective bargaining contracts.[3] The better result is that reached in the recent case of Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150, 351 F.2d 576 (7th Cir. 1965), which held the Federal Act was applicable in actions seeking the enforcement of arbitration clauses in collective bargaining contracts. Although the Federal Act was not specifically mentioned in Minnesota Joint Board, Amalgamated Clothing Workers of America v. United Garment Mfg. Co., 338 F.2d 195

---

2. See cases cited in Pirsig, The Minnesota Uniform Arbitration Act and the Lincoln Mills Case, 42 Minn.L.Rev. 333, 361 n. 108, 109 (1958).

3. 353 U.S. at 466, 77 S.Ct. 912.

(8th Cir. 1964), there the Eighth Circuit reversed the District Court's refusal to stay a union's action for damages against a company for alleged breach of a collective bargaining contract pending arbitration of the dispute. Section 3 of the Federal Act specifically authorizes such a stay. Moreover, it would seem that the summary motion procedure of the Federal Act serves to effectuate Federal policy, recognized in the *Lincoln Mills* case and subsequently reiterated,[4] in favor of arbitration as an expeditious means of resolving labor disputes.

Even if the Federal Act is not applicable per se to this type of action,[5] certainly it is part of that body of Federal law to which the courts may resort in implementing Federal policy in this area. The same is true of the Minnesota Act. *Lincoln Mills* teaches that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy."[6] While the Supreme Court was undoubtedly referring to principles of substantive law, there should be no impediment to the use of State procedure, in the absence of a contrary or inconsistent Federal statute or rule.

Company maintains that the present motion must be tested by Rule 56 which precludes summary disposition where genuine issues of material fact are in dispute. From a practical standpoint, it would seem to be immaterial whether the issues are presented by motion under the Federal Act or the Minnesota Act, or by motion for summary judgment or motion for judgment on the pleadings. Regardless of the manner in which the issue is raised, a single question is presented— did these parties agree to submit this particular dispute to arbitration. Where, as here, there is a written contractual provision, the question is to be determined primarily within the four corners of the instrument. In the present case, insofar as the motion for arbitration is concerned, the only dispute is what the contract language means, not what that language is. This is not a factual dispute, but a dispute as to interpretation, or legal effect. If, from the written language, it is impossible to ascertain the true intent of the parties, then perhaps resort may be had to other evidence, such as bargaining history.[7] Here Company has presented some bargaining history and other factual background in connection with its counterclaim for reformation. Both the issue of arbitration and that of reformation can appropriately be determined on the present record.[8]

*Reformation—*

The arbitration provision in the bargaining contract between Company and Union states:

"All disputes arising as to the interpretation of, or adherence to the

---

4. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) ; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

5. Company suggests that the Federal Act is not applicable here for lack of diversity. While the Act itself does not furnish an independent basis of Federal jurisdiction, at least its procedural provisions should be applicable in cases, like this one, where there is jurisdiction grounded on some other statute. The "substantive" section of the Federal Act, Section 2, granting the right of specific performance of arbitration agreements, has been held inapplicable in diversity cases where the governing

State law holds such agreements unenforceable. Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

6. 353 U.S. at 457, 77 S.Ct. at 918.

7. See note 9, infra.

8. Counsel for Company has indicated that there were no conversations at the time the contract was entered into which would bear on the alleged mutual mistake in omitting a specific exclusion from the arbitration clause in the contract. Counsel suggests that mutual mistake, and what the parties actually intended, can be implied from all of the circumstances. Since the affidavit submitted gives much of this background, further testimony or affidavits are unnecessary to determine the counterclaim for reformation.

terms and provisions of this Agreement, or any grievances arising hereunder which are expressly made subject to the provisions of this Article, shall be settled in the following manner, at the request of either the Union, the involved employee or employees, or the Employers: * * * ." (Article VI, Section 1)

Three steps are then outlined for the resolution of the dispute, and if none is successful, the last step is reference to an Arbitration Committee (Article VI, Section 1(d)), whose decision is final and binding (Article VI, Section 3). Company seeks to reform the arbitration clause to expressly exclude from its scope matters relating to the job duties of supervisory employees, alleging that such a provision was omitted through mutual mistake, at the time the agreement was entered into. On oral argument, counsel for Company conceded that no statements were made at the time of negotiating the contract with reference to a specific exclusion for this type of dispute. In an affidavit, J. E. Herzog, Industrial Relations Manager of Company, states, "As of the time the current collective bargaining agreement was entered into, there had never been an instance in which any union representative had ever stated to me any intention that matters relating to the performance of production work by supervisors would be subject to arbitration." However, he makes no claim that either the Union or the Company expressly stated that such matters should be excluded.

Monty Pope, one of Union's representatives at the negotiation of the present contract, denies in an affidavit that there was ever any agreement to exclude from the contract the performance of bargaining unit work by managerial employees.

In his affidavit Mr. Herzog reviews the history of the relations between Union and Company, and Mr. Herzog suggests that at the time the present agreement was entered into, Union had never protested the use of supervisory employees for production work, although this has been done consistently in the past. Company does admit, however, that a grievance was filed by the Union concerning this practice subsequent to the effective date of the present contract, and was submitted to arbitration. At that time, Company did not seek to reform the agreement. Certainly if there had been a mutual mistake in the making of the present contract, Company would have resisted arbitration of the previous dispute. In view of this earlier opportunity to rectify the mistake, and the failure to do so, it seems reasonable to conclude that there was no mutual error in the drafting of the arbitration clause.

*Agreement to Arbitrate—*

Counsel for Union suggested on oral argument that the Order to proceed with arbitration be entered, leaving for the arbitrator's decision the question of whether or not the parties had agreed to arbitrate. It is clear that this issue must be resolved by the Court. John Wiley & Sons Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The principles governing determination of the question are well settled. Arbitration clauses in collective bargaining contracts are to be given a broad and liberal construction. See Bonnot v. Congress of Independent Unions, Local No. 14, 331 F.2d 355 (8th Cir. 1964), and cases cited therein. All doubts should be resolved in favor of arbitration. Forceful evidence of intent to exclude a particular dispute from the contract is required. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Applying these principles to the present case, I conclude that the Tuttle dispute is subject to arbitration.

The arbitration clause here covers disputes involving interpretation of, or adherence to, the terms of the contract. Union claims a violation of the provisions defining the bargaining unit (Article I, Section 1); requiring advance notice to Union of changes in plant policies affecting bargaining unit employees (Article III, Section 5); establishing wage groups (Article VIII, Section 1

(a)); and the provision establishing a job evaluation committee for studying changes in the system (Article VIII, Section 1(d)). Company relies upon Article II, Section 1, preserving its right to make managerial decisions. In addition, Company relies upon a history of supervisory employees doing production work, and on the fact that nothing in the contract specifically limits or prohibits that practice.

The latter contention was advanced and rejected in Local 156, United Packinghouse, Food and Allied Workers, AFL-CIO v. Du Quoin Packing Co., 337 F.2d 419 (7th Cir. 1964). During a strike the employer there made some changes in its operations, including the transfer of bargaining unit work to an I.B.M. machine. After the strike was settled by a new agreement, the union claimed that the duties should be transferred back to bargaining unit employees. In the union's suit for an Order compelling arbitration of this claim, the employer contended that since no specific provision in the agreement covered the matter, there was no dispute "as to the meaning and application of the provisions" of the contract, within the language of the arbitration clause. This argument was rejected and arbitration ordered, the Court indicating that the broad language of the arbitration clause placed a heavy burden on the party claiming a particular dispute was not covered.

The management clause relied upon by Company also suggests that the present grievance is a dispute over interpretation of the contract. Company finds authority in that clause for its action in assigning production work to supervisory employees; the Union does not agree that this practice is governed by that section. Thus, there is a dispute over the interpretation of a contractual provision.

■■■■ Company strenuously maintains that the bargaining history and nature of its business suggests that the parties did not agree to arbitrate this dispute. Different views have been taken as to whether bargaining history may be considered in construing arbitration clauses.[9] In any event, included in the prior history of the relations between the parties is a similar dispute which was submitted to arbitration. Prior practice under an arbitration clause is an aid in determining the scope to be given it in a later dispute. Cf. Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Company attempts to distinguish the previous dispute from the one here. The merits of the dispute are not before this Court, but must be resolved by the arbitrator. Pietro Scalzitti Co. v. Internat'l Union of Operating Engineers, Local No. 150, supra.

■■■■ In view of the sweeping language of the clause here, covering *all* disputes, with no exclusions indicated; the liberal interpretation to be given such clauses; and the heavy burden placed on the party seeking to avoid arbitration, I conclude that Union's application and motion should be granted.

9. In Pacific Northwest Bell Tel. Co. v. Communication Workers of America, 310 F.2d 244 (9th Cir. 1962), it was held the district court erred in refusing to consider bargaining history in determining whether a dispute was subject to arbitration under the contract. On a second appeal, from the trial court's decision holding the dispute outside the arbitration clause, the union contended for a rule that if resort must be had to parol evidence to determine the issue of arbitrability, then it should be left for the arbitrators. In Communication Workers of America v. Pacific Northwest Bell Tel. Co., 337 F.2d 455 (9th Cir. 1964), the earlier decision was adhered to. Cases reaching the opposite result, which apparently are in the majority, are collected at 337 F.2d at 458 n. 2.