**LOCAL 32B, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, Plaintiff-Appellant,**

v.

**SAGE REALTY CORP. et al., Defendants-Appellees.**

**No. 1292, Docket 75–7346.**

United States Court of Appeals, Second Circuit.

Argued July 16, 1975.

Decided Sept. 25, 1975.

Arnold R. Streit, New York City (Israelson & Streit, New York City, of counsel), for appellant.

Maurice H. Goetz, New York City (Rosenman Colin Kaye Petschek Freund & Emil, Joseph L. Getraer, Arthur Linker, New York City, of counsel), for all appellees except Sage Realty Corp.

Harold Dublirer, New York City (Dublirer, Haydon & Straci, New York City), for appellee Sage Realty Corp.

Before MOORE, FRIENDLY and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

This appeal is from an order denying an application for a preliminary injunction coupled with a request for an order compelling arbitration.[1] Only the denial of the preliminary injunction is before us. The background facts are sufficiently complex that recitation in some detail is required.

The plaintiff-appellant, Local 32B Service Employees International Union, AFL–CIO (Local 32B), is a labor organization representing approximately 45,000 building service workers in the City of New York. At the time of the filing of this complaint (May 28, 1975), Local 32B's membership included about 25 cleaning and maintenance employees at two New York City office buildings—77 Water Street and 127 John Street. In the course of its functions, Local 32B periodically negotiates a collective bargaining agreement covering a majority of its members with an association of employers known as the Realty Advisory Board on Labor Relations Inc. (the "RAB").

The defendant William Kaufman Organization is a name under which defendants William, Robert, and Melvyn Kaufman do some of their business. Robert Kaufman is part owner of the building at 77 Water Street, and Melvyn Kaufman is part owner of 127 John Street. Both buildings are leased to William Kaufman and Louis D. Feil. Ever since the buildings were constructed, defendant Sage Realty Corp. ("Sage"), of which William, Robert, and Melvyn Kaufman are officers and principal shareholders, has held the management contracts. In 1969 (for 77 Water Street) and 1971 (for 127 John Street), Sage engaged Cushman & Wakefield ("C & W") as renting and management agent for the buildings. Through a subsidiary, C & W contracted with defendants Allied Maintenance Corp. ("Allied") and Prudential Building Maintenance Corp. ("Prudential") to perform the cleaning and maintenance at 77 Water Street and 127 John Street respectively. Allied and Prudential each had collective bargaining contracts with Local 32B, although the record does not disclose whether the contracts were on precisely the same terms as the RAB/Local 32B agreements.

On behalf of each building,[2] C & W applied for membership in the RAB. For each building C & W stated on its application that it had one employee. C & W also signed assents to the 1972 collective bargaining agreement negotiated between the RAB and Local 32B. On the assent forms, the William Kaufman Organization was listed as owner and Cushfield Maintenance Corp. (a C & W subsidiary) as the "Employer".

Effective September 1, 1974, Sage terminated C & W's management contracts, and Sage itself assumed management of the buildings. Sometime after September 1, C & W informed the RAB that it (C & W) was no longer managing the buildings, and the RAB then substituted Sage for C & W on the bookkeeping records. Meanwhile, Allied and Prudential still cleaned and maintained the buildings and continued to do so through May 31, 1975.

On January 2, 1975, the RAB and Local 32B signed a new collective bargaining agreement to replace the 1972 agreement, which had just expired.

1. On June 18, 1975, this court denied a motion for a restraining order pending determination of this appeal, except that the panel did restrain the defendants from treating as permanent any changes occurring in the status quo following the district court's denial of the preliminary injunction.

2. The construction and by-laws of the RAB require applications for membership to be made in behalf of some building in the City of New York. Article II of the constitution indicates that membership can be by a "person, firm or corporation owning, leasing or operating" a building. Section 14 of the by-laws provides that persons, firms or corporations desiring to obtain membership for one or more buildings "owned or operated in the City of New York" may apply to the Secretary of the RAB.

However, no assent form for the 1975 agreement was sent to Sage by the RAB. On January 21, 1975, in response to some communication (the nature of which is not disclosed in the record) received from the RAB, Sage and the William Kaufman Organization sent identical letters to the RAB stating that "[w]e are not now nor do we intend to be members of the [RAB] . . . ."

At the end of April 1975 Allied and Prudential received notice from Sage of cancellation of their services effective after work on May 31, 1975. Allied and Prudential duly notified Local 32B. The union thereupon wrote Sage requesting the name of the new cleaning and maintenance contractor and insisting upon compliance with the provisions of Article I of the RAB/Local 32B agreement,[3] which directs an employer hiring a contractor to require such contractor to assume the RAB agreement and to employ the same work force then engaged at the buildings. When no satisfactory response was received from Sage, Local 32B filed this suit in the district court. It sought an injunction restraining the defendants from dismissing the current work complement in the two buildings and from permitting Monahan Commercial Cleaners, Sage's new cleaning and maintenance contractor (which had a collective bargaining agreement in force with Teamsters Local 803), to begin work at the two buildings. The Union also sought an order compelling arbitration on the matter of compliance with Article I of the RAB/Local 32B agreement.

It is the contention of Local 32B that C & W joined the RAB as agent for the defendants, thereby making them members of the RAB. Since no written notice of withdrawal from the multi-employer bargaining association was received from the defendants until after the 1975 agreement had been signed, Local 32B argues that the defendants are bound by its terms. *Retail Associates, Inc.,* 120 NLRB 388 (1958); see *NLRB v. Sheridan Creations, Inc.,* 357 F.2d 245, 247 (2d Cir. 1966), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967). After an evidentiary hearing, however, the district court sustained the defendants' position that they had never been members of the RAB and therefore were not bound by the 1975 agreement. Specifically, the court found no proof that C & W had any authority to apply for membership in the RAB on behalf of the defendants or that the C & W application for membership was so intended. The only action taken by Sage that was potentially inconsistent with nonmembership was payment of a semiannual dues installment after the bill therefor had been routinely transmitted to Sage by C & W along with other bills pertaining to the buildings that had been received by C & W after the 25th of August. The district court, however, credited the testimony of Sage's controller and found that the payment had been inadvertently made. Thus, having found that there was "little or no likelihood that plaintiff might ultimately establish that the defendants are bound by the terms of the [1975] Agreement," the court denied the preliminary injunction.

Although membership in the RAB must be on behalf of some building, neither the constitution nor the by-laws of the RAB expressly require the owner to be a member. *See* note 2 *supra.* It was

---

**3.** Article I of the RAB/Local 32B agreement provides in part:

2. The employer shall not make any agreement or arrangement for the performance of work and/or for the categories of work heretofore performed by employees covered by this agreement except within the provisions and limitations set forth below.

   \*   \*   \*   \*   \*   \*

4. The employer shall require the contractor to assume this agreement and to file a sub-assent hereto with the Union through the R.A.B., and the contractor shall have all the rights and obligations of an Employer hereunder . . . . The Employer agrees that employees then engaged in the work which is contracted out shall become the employees of the initial contractor or any successor contractor, and agrees to employ or re-employ those working for the contractor when the contract is terminated or cancelled.

therefore not imperative that C & W join as agent of the defendants. And the agreements between Sage and C & W, although mandating C & W to hire persons necessary to operate the buildings and providing that C & W would be reimbursed by Sage for all salaries and union payments, stated that persons hired "would be the Agent's and not Sage's employees". It was because of this clause that the court below found that "the defendants were not notified of C & W's application to the RAB with respect to these two buildings." Although this contract would not be determinative of the employees' rights, it does help indicate that C & W did not intend to join the RAB on behalf of Sage. In addition, there was testimony that C & W never advised the defendants that it had become a member of the RAB in respect of the buildings (Tr. 273), despite the fact that C & W customarily did so when it joined on behalf of an owner (Tr. 275, 279). Furthermore, even if it be assumed that C & W had real or apparent authority to confer on RAB the power to bind the defendants to labor agreements (such as the RAB/Local 32B 1972 agreement), this authority ceased after the September 1974 termination and would not have extended to the 1975 agreement.

Finally, Local 32B failed to establish that Sage itself ever employed members of Local 32B in these two buildings after having succeeded C & W. Sage at some point in early 1975 employed two secretary-receptionists. But these two individuals were later transferred to the employ of Prudential, and the record does not disclose when they became members of Local 32B (Tr. 304–310).

At a trial on the merits the Union may be able to develop its case more fully and show that the defendants were bound by the 1975 agreement. In its application for a preliminary injunction, however, Local 32B has failed to do so, and accordingly we affirm the district court's denial of a preliminary injunction.

In view of our decision, it is unnecessary for us to consider the contention of the defendants that Article I of the RAB/Local 32B agreement violates section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e) (1970) and the antitrust laws, as interpreted in *Connell Construction Co. v. Plumbers and Steamfitters*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975).

Order affirmed.