**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 139, Plaintiff-Appellee,**

v.

**CARL A. MORSE, INC., Defendant-Appellant.**

No. 75–1190.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1975.

Decided Feb. 10, 1976.

Victor M. Harding, James W. Mohr, Jr., Milwaukee, Wis., for defendant-appellant.

Gerry M. Miller, Milwaukee, Wis., for plaintiff-appellee.

Before STEVENS, Circuit Justice,* TONE, Circuit Judge, and HOFFMAN, Senior District Judge.**

JULIUS J. HOFFMAN, Senior District Judge.

The question presented for decision is whether a court, before ordering arbitration, must first pass upon the employer's claim that it is not bound by the particular substantive provision of the collective bargaining agreement on which the grievance is based, or whether the binding effect of the provision under attack must be left to the arbitrator, when the underlying contract calls for arbitration of "all grievances, disputes or complaints of violations of any provisions" of the agreement, and gives the arbitrator "sole and exclusive jurisdiction to determine the arbitrability of such a dispute as well as the merits thereof."

The employer, Carl A. Morse, Inc., of Illinois, has appealed from an order entered by the District Court directing the parties to arbitrate. The foundation facts are not in dispute. The union (Local No. 139 of the International Union of Operating Engineers) represents operators of machinery and equipment in the building and heavy construction industry in the State of Wisconsin. On behalf of those employees, the union negotiated a master contract with the Wisconsin Chapter of the Associated General Contractors of America, Inc., applicable by its terms "to all counties in the State of Wisconsin" with the exception of six specified counties in the Milwaukee area. Under this form contract, a contractor agrees that he will sublet or contract out work covered by the agreement only to a subcontractor who is a party to a written labor agreement with this union.

The employer here was engaged as a general contractor in construction at two sites in Wisconsin in March of 1974, with one project at Madison and the other at Wausau. The company authorized its project superintendent at the Madison jobsite to enter into an agreement with the union, and he signed the form contract for the employer on March 25, 1974, "effective as of June 1, 1973." The next day, the union filed a grievance based on the fact that certain work at the Wausau site had been subcontracted to a masonry subcontractor whose employees were members of a different union (the Laborer's Union rather than the Operating Engineers), and were operating forklift trucks there, work covered

* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975, as Circuit Justice.

** The Honorable Julius J. Hoffman, Senior District Judge for the Northern District of Illinois, is sitting by designation.

by the March 25 agreement. The employer refused to adjust the grievance or to submit to arbitration, and the union thereupon filed a complaint with the Wisconsin Employment Relations Commission, charging failure to arbitrate. The employer removed the proceeding to the United States District Court for the Eastern District of Wisconsin[1], and the union there filed a petition to compel arbitration under the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*

The employer thereupon filed its answer to the original complaint, alleging that "The contract was executed by the Madison project superintendent under the belief that it did not apply to subcontracts already entered into . . . and [was], therefore, not applicable to subcontracts already let on the Wausau project . . . several days or weeks prior to March 25, 1974." The answer also alleged that the union representative who negotiated the contract knew of the prior subcontracts in Wausau, and that the employer had responded to the union's grievance "by stating that the Wausau job was not covered by the Madison contract." In an oral hearing on the status of the case, after its transfer to a new judge, these positions were amplified by assertions that the clauses of . the agreement concerning its geographic scope, its retroactivity, and its limitations on subcontracting should be altered by a decree of reformation for mistake, or invalidated for fraud in the inducement, and that the Madison project superintendent had no authority to make

an agreement covering the Wausau project.

In a detailed memorandum of opinion, confirmed by a second written opinion on motion to vacate, the District Court ruled that the defenses asserted by the employer should be adjudicated by the arbitrator pursuant to the provisions of the collective bargaining agreement, and entered the order, directing arbitration, which is the subject of this appeal.
We affirm.

Settled principle, enunciated in the *Steelworkers* trilogy,[2] leaves a court with a narrow office in a suit seeking to compel arbitration. Two questions are dispositive here. Is there a valid agreement to arbitrate? Does the agreement cover the asserted dispute?

## I.

The first requisite to arbitrability is self-evident. The need for a valid agreement, binding the party to submit his right to arbitration, was restated in *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974):

> No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so.

Here the employer has raised no question of the validity of the agreement to arbitrate. The objections of mistake, fraud, and want of authority are directed not to the arbitration clause of the collective bargaining agreement, but

---

1. Neither party has questioned the propriety of this removal, in this Court or in the District Court. The District Court was vested with subject matter jurisdiction of the proceeding as an original action commenced there, under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 792 (1957). Accordingly, any impropriety in removal is waived. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16–17, 71 S.Ct. 534, 95 L.Ed. 702 (1951). We, therefore, have no occasion to consider whether the Wisconsin Employment Relations Commission is a "State court" within the meaning

of the removal statute. Judicial Code § 1441(a), 28 U.S.C. § 1441(a). See *Tool and Die Maker Lodge No. 78, I. A. M. v. General Electric Co.,* 170 F.Supp. 945, 949–51 (E.D. Wis.1959).

2. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

rather to those clauses concerning coverage, temporal and geographic, which would apply its provisions retroactively, to subcontracts already let, and spatially, to the Wausau project as well as the Madison job. The employer's position does not deny any contractual duty to arbitrate at all, no matter what the subject of the asserted grievance. Its attack is confined to the validity of the specific, substantive provisions of the contract which are claimed to outlaw its pre-existing Wausau subcontract. The duty not to subcontract under these conditions at this site is called into question, not the machinery for enforcing such a duty or determining whether it exists.

This case thus stands in contrast with cases like *Local 1416, Int'l Ass'n of Machinists v. Jostens, Inc.,* 250 F.Supp. 496 (D.Minn.1966), where reformation of the arbitration clause itself was sought on grounds of mutual mistake, leaving the grievance to other methods of resolution. Here the reformation sought would eliminate the underlying duty, depriving the grievance of merit, and leaving nothing for any form of resolution, either arbitral or judicial.

■ The separability of the arbitration clause from other provisions of an agreement was declared by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 88 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The invalidity of other sections of an agreement neither infects nor undermines the binding force of its arbitration provisions, so long as those provisions are not directly and specifically attacked. See also *Hamilton Life Ins. Co. v. Republic National Life Ins. Co.,* 408 F.2d 606, 610 (2d Cir. 1969). While this separability principle was established under § 4 of the United States Arbitration Act, 9 U.S.C. § 4 (1925), this Court has held that collective bargaining agreements are directly subject to its provisions. *Pietro Scalzitti Co. v. International Union of Operating Engineers,* 351 F.2d 576, 580 (7th Cir. 1965). In any event, the federal law which the federal courts are left to fashion under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, rejects the restrictive common-law view and favors enforcement of agreements to arbitrate. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Under this judge-made law as well as under the terms of the Arbitration Act, the principle of separability carries equal force.

The attack on validity in *Prima Paint,* 388 U.S. 395, 88 S.Ct. 1801 (1967), was broad gauged, asserting that the contract as a whole was voidable from its inception for fraud in the inducement. That equitable defense, if sustained, would have invalidated the entire contract, carrying the arbitration clause down with it. Nonetheless, the Supreme Court ruled that the defense must be adjudicated by the arbitrator, not the court.[3]

Here the employer's attack is narrow in scope, reaching not to the agreement as a whole but only to specific, particularized substantive provisions on the fringes of its scope. It is accordingly unnecessary for decision to resort to a sweeping principle of separability which allows the arbitrator to pass upon defenses to the validity of the contract as a

---

**3.** We find no retraction from this position in the Supreme Court's subsequent decision in *International Union of Operating Engineers v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). There the Supreme Court noted that the lower courts had concluded that the collective bargaining agreement remained in effect, over the company's argument that the whole agreement had been abandoned and that enforcement of any part was barred by the equitable doctrine of laches. 406 U.S. 489, 92 S.Ct. 1710. Since the decision below was reversed on other grounds, the Supreme Court had no occasion to decide whether a court could properly rule upon an equitable defense going to the validity of the contract as a whole. If any implications at all may be drawn from the majority opinion, they would seem to confirm the separability principle of *Prima Paint,* as suggested by the dissent's protest against "arbitration of an equitable defense against the enforceability of the *entire* contract." 406 U.S. 495, 92 S.Ct. 1714.

whole. It is equally unnecessary to consider the distinction between a defense (like fraud or mistake) which may render an ostensible contract voidable or unenforceable, on the one hand, and the absence of a prerequisite to any agreement at all on the other hand, as in the case of forgery, of complete lack of agency or authority, or of want of a binding successor relationship. *Cf. Local 32B, Service Employees International Union, AFL–CIO, v. Sage Realty Corp., et al.,* 524 F.2d 601 (2d Cir. 1975); *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673, 676 (2d Cir. 1972) (" 'if it was claimed that . . . there had at no time existed as between the parties any contractual relationship whatever . . a trial of this issue would be required before an order could be issued directing the parties to proceed to arbitration' "). Here the arbitration clause is wholly separable, in logic and in its workings, from the clause extending the geographic scope of the agreement to other parts of Wisconsin. The conclusion that one clause may survive the invalidation of the other rests not on reason alone, but is embodied in the express terms of Article XII of the collective bargaining agreement itself, declaring that "If any . . . provision of this Agreement shall be held invalid . . . , the remainder of this Agreement shall not be affected thereby and shall stay in full force and effect." [4]

We conclude, therefore, that nothing has been presented or argued on behalf of the employer to require a judicial trial of the validity of the agreement to arbitrate contained in the collective bargaining contract. The District Court correctly held that the parties are bound by their valid and effective arbitration agreement.

## II.

The second prerequisite to an order compelling arbitration is the matter of interpretation rather than validity. Here the question is not whether the parties have agreed to arbitrate at all, but whether they have agreed to arbitrate the particular dispute at issue. The question in the first instance is a matter of interpreting the parties' agreement, but the process of interpretation is guided by the "now well-known presumption of arbitrability for labor disputes" as reiterated in *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 377–78, 94 S.Ct. 629, 637, 38 L.Ed.2d 583 (1974):

" 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)."

In this agreement, the arbitration provision is broad and sweeping, with no exceptions or limitations. "All grievances, disputes or complaints of violations of any provisions of this Agreement shall be submitted to final and binding arbitration by an arbitrator appointed by the Wisconsin Employment Relations Commission." It is apparently the employer's position that this expansive clause cannot reach this dispute because the "provisions of this Agreement" should first be judicially excised to eliminate the provisions on which this grievance is based. Such a restrictive interpretation could be supported only upon the ground that the arbitrator's power is confined to the narrow function of interpreting, construing, and applying whatever provisions of the agreement are conceded by both parties to be valid, with all questions of validity reserved for prior judicial resolution.

---

4. "For these reasons, we find it unnecessary to consider whether the Fifth Circuit's decision in *International Ladies Garment Workers Union v. Ashland Industries, Inc.,* 488 F.2d 641 (5th Cir. 1974), *cert. denied,* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1975), relied upon by the employer here, can be squared with the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 88 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

Such an interpretation could not be supported in the face of the Supreme Court's reversal of this Court's ruling in *International Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). There a majority of this Court, over the dissent of Judge Stevens, had held that before ordering arbitration, the court itself should pass upon defenses premised not upon the contract's terms but upon general principles of equity. Such general principles, "extrinsic" to the contractual provisions, were thought to be appropriate for judicial application without invading the arbitrator's province or "indulging in the judicially unwarranted task of interpreting the collective bargaining agreement." 440 F.2d 560. The Supreme Court's reversal teaches that there is no sustainable distinction between "intrinsic" issues of interpretation and "extrinsic" issues involving general legal principles. Issues of both kinds must be left to the arbitrator under a clause of this breadth, when they equally affect the merits of the grievance or dispute. Questions of general validity and enforceability of the provisions of the agreement, as well as their meaning as intended by the parties, must be resolved through the procedures and in the tribunal chosen by the parties.

As this Court has recently noted, the arbitrator enjoys a wide latitude in fashioning an appropriate remedy, in the absence of contractual restriction, and is vested with power to decide broad issues of the parties' contractual relationships as well as specific grievances. *United Electrical Radio and Machine Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1226 (7th Cir. 1975). It is customary and appropriate for arbitrators to pass upon claims for reformation for mutual mistake, often applying principles more liberal than judicial equity, and upon claims for rescission if the mistake was unilateral and the other party knew and took advantage of it. See *Elkouri & Elkouri,* How Arbitration Works 346–47 (3d ed. 1973). This is not a case where the agreement expressly deprives the arbitrator of "power to destroy, change, add to or delete from its terms", as in *West Coast Telephone Co. v. Local Union No. 72, Int'l Brotherhood of Electrical Workers,* 431 F.2d 1219, 1221 (9th Cir. 1970). Neither the contract nor judicial decisions limit the power of the arbitrator in this case to grant whatever relief may prove to be appropriate for the employer, whether upon the ground of mistake, fraud, imposition, or want of authority of its agent.

While a broad presumption of arbitrability is commanded by the *Steelworkers* trilogy, the interpretation of an arbitration clause remains a judicial function in the typical case, "unless the parties voluntarily submit to the arbitrability to the arbitrator." *Associated Milk Dealers, Inc. v. Milk Drivers Union Local 753,* 422 F.2d 546, 550 (7th Cir. 1970). Here the agreement embodies that relatively unusual submission, declaring, "The arbitrator shall have sole and exclusive jurisdiction to determine the arbitrability of such a dispute as well as the merits thereof." The arbitrator's power is thus compounded. If there were any merit in the argument that, under the typical and simple arbitration clause, the arbitrator has no power to adjudicate defenses to the validity of the substantive provision imposing the duty whose alleged breach gives rise to the grievance, that argument could not serve to retain the question for judicial predetermination when the arbitrator's powers are compounded, vesting him with jurisdiction, "sole and exclusive", to determine arbitrability.

The courts are admonished to resist giving weight to an appraisal of the merits of the grievance or to the equities of a particular claim when they are called upon to adjudicate arbitrability. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Nothing we say should be construed, therefore, as intimating any views concerning the just result in this case, or as suggesting how the arbitrator might resolve the dispute. The nature of the issues

presented demonstrates the wisdom of committing them to arbitral resolution. The underlying contract is a form negotiated for general applicability to all building and heavy construction contractors in the state. Disputes under it may involve custom, usage, and practice in the industry, matters better left to the labor arbitrator. See *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 378–79, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). The construction business is by nature, mobile, transitory, and temporary, and it might prove out to be customary in the industry to make labor contracts covering an entire operating area, and unusual to make a contract confined to one specific project site. On the other hand, it is at least unusual for a party to enter into a contract knowingly when its retroactive terms place him in breach of its provisions on the instant of execution. These questions raise issues of the fair and appropriate resolution of the dispute, informed by knowledge of prevailing industrial practices, leavened by a consideration of business ethics, and made in a spirit of compromise, all enhanced by the arbitrational expertise and its less formal processes. See *Federal Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd.,* 457 F.2d 387, 390 (2d Cir. 1972).

■ The employer has complained that the proceedings below partook of the nature of a motion for summary judgment, but deprived it of the opportunity to present affidavits in support of its defenses in opposition to arbitration. We have assumed, for purposes of this decision, that the employer's positions can be adequately backed up by evidence sufficient to create genuine issues of fact. But those issues are to be resolved by the arbitrator, not by the court. Whether under summary judgment procedures or upon a petition to compel arbitration under the United States Arbitration Act, 9 U.S.C. § 4 (1925), the issues open for judicial consideration are limited and rarely factual. Here they raise only questions of law, and were properly ruled upon by the District Court. See *Local 1416, International Association of Machinists v. Jostens, Inc.,* 250 F.Supp. 496, 499 (D.Minn.1966); *Joseph Muller Corporation Zurich v. Commonwealth Petrochemicals, Inc.,* 334 F.Supp. 1013, 1018–19 (S.D.N.Y.1971).

Affirmed.