**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 249, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS, INC., Defendant.**

Civ. A. No. 82–2542.

United States District Court, W.D. Pennsylvania.

March 3, 1983.

Joseph J. Pass, Jr., Pittsburgh, Pa., for plaintiff.

Titus, Marcus & Shapira, Bernard D. Marcus and Jon Hogue, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

WEBER, District Judge.

Plaintiff Union Local brings this action to overturn the decision of an arbitration panel which approved defendant-Employer's change of operations. Defendant has filed a Motion to Dismiss the complaint and award attorney's fees. Defendant asserts as the basis for dismissal, (1) the decision of the arbitration panel is final and binding and not reviewable by this court, and (2) Plaintiff has failed to join all necessary parties.

Both parties have submitted evidentiary material in support of their positions. In accord with Fed.R.Civ.P. 12(b), the Defendant's motion will be treated as one for summary judgment under Fed.R.Civ.P. 56. No material issues of fact exist and for the reasons stated below defendant is entitled to summary judgment.

## FACTS

Defendant Consolidated Freightways (hereafter "Company") is an interstate motor carrier providing freight service throughout the United States. Plaintiff is a Teamsters Local with a territorial jurisdiction comprised of Allegheny County. Both parties are signatories to the National Master Freight Agreement (NMFA) Arts. 1–39, and the local Supplement Agreement, Arts. 40–54.

The company has maintained a number of terminals in the Ohio-Western Pennsylvania area, but did not have a terminal in Allegheny County, Pennsylvania. At some unspecified date, the Company decided to reorganize its operations in this area and proposed a number of changes including the establishment of a terminal in Pittsburgh, Allegheny County. This proposal was submitted to the various affected locals.

Prior to this change in operations, the Company had serviced Allegheny County from its outlying terminals. In its proposed reorganization, the Company sought to retain limited runs into Allegheny County from its outlying terminals. Plaintiff Local objected to this aspect of the change of operations because the work would be performed within plaintiff's territorial jurisdiction by members of other Locals. The parties were unable to reach a mutually acceptable resolution of this dispute and the company proceeded to arbitration.

The NMFA provides detailed provisions for grievance procedure. By Articles 8, 45, and 46, the NMFA provides grievance machinery for the resolution of disputes. In addition to the general grievance committees, a specialized grievance committee entitled the Change of Operations Committee (COC) is created by Art. 8, Section 6, and Art. 45, Section 6 of the NMFA and Supplement. The Company submitted its proposal to the COC which approved the change of operations despite plaintiff's objections and challenge to jurisdiction.[1] Defendant did not submit its proposal and the dispute to any other grievance committee. The effect of the COC's decision was to permit members of other union locals to perform work within the territorial jurisdiction of the plaintiff Local. Plaintiff contends that the COC's decision is contrary to express contract provisions and is beyond the COC's authority.

## ANALYSIS

We recognize that this court's power to review an arbitration panel decision is narrowly defined. Courts are not to review the arbitrator's factual findings or interpretation of labor contract provisions absent fraud, partiality, or misconduct. *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir.1969). The court may not permit the arbitrator to simply ignore provisions of the agreement. *Id.; Price v. International Brotherhood of Teamsters,* 457 F.2d 605 (3d Cir.1972). However, if any rational basis exists for the arbitrator's interpretation of the agreement, the court may not review that interpretation. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d at 1128.

The Local claims that the COC's decision is contrary to various provisions of the Agreement. Plaintiff specifically re-

fers to Art. 3, sec. 4, of the NMFA which reads:

| | |
|---|---|
| Section 4. | The Employers agree to respect the jurisdictional rules of the Union and shall not direct or require their em- |
| Work Assignments | ployees or persons other than the employees in the bargaining units here involved, to perform work which is recognized as the work of the employees in said units. This is not to interfere with bonafide contracts with bonafide unions. |

The Local contends that the COC's decision approving a plan which requires drivers to cross union jurisdictional lines is contrary to this provision.

The Local also alleges that the COC's decision ignores the dictates of Art. 53, section 1 of the Local Supplement, which provides in pertinent part:

Where the Employer maintains a terminal within a Local Union's territorial jurisdiction, road drivers will not be permitted to make pickups and/or deliveries within the territorial jurisdiction of that Local Union unless agreed to in writing by the Employer and that Local Union.

Thus it is argued that because Allegheny County now contains a terminal, defendant's use of out-county drivers for pickups and deliveries in Allegheny County is prohibited by the agreement.

However, by the terms of Art. 53, section 3(a) and (c), the above quoted provision does not apply to "cartage drivers" engaged in "peddle runs." Plaintiff Local has not contradicted evidence submitted by the Defendant indicating that all drivers in the outlying terminals are cartage drivers, and all runs into Allegheny County from outlying terminals are "peddle runs" as defined by Art. 53, section 3(c). (Palazzo affidavit). Further, Article 52 of the NMFA Local Supplement governing cartage drivers contains no restriction similar to that in Art. 53 quoted above. Defendant's operations fall within an exception to the prohibition of Art. 53, and are not prohibited by Art. 52.

---

1. The Local signed the COC submission form and argued the jurisdictional issue before the COC. (Byrnes Affidavit). This does not constitute a waiver of the jurisdictional issue. *International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers,* 574 F.2d 783, 786, n. 2 (3d Cir.1978).

The COC's conclusion that the proposed "peddle runs" into Allegheny County were permissible is supported by the demonstrated interrelation of Arts. 52 and 53. Further, these provisions support the conclusion that Art. 3, sec. 4, quoted above, has no application to this problem. In reading the contract as a whole whose parts are consistent, it is rational to conclude that the provisions of Art. 3, sec. 4 do not prohibit those operations which Arts. 52 and 53 expressly confer on cartage drivers to the exclusion of over-the-road drivers. This manner of interpretation of contract provisions is solely the province of the contractually created arbitrator, and the courts are to defer to those interpretations if any rational basis exists for them. *Enterprise,* 363 U.S. at 599, 80 S.Ct. at 1362. Such is the case here and we therefore may not review the COC's decision.

 The Local has also raised for the first time in its brief in response to Defendant's motion the argument that the COC is a body of rather narrow jurisdiction, and that the issues raised by the Company's proposed change of operations were not within the COC's authority. We find no support for this in either contract language or previous practice. The Committee's title indicates its scope. The provisions which create the COC, Art. 8, sec. 6, and Art. 45, sec. 6, expressly require that all changes of operation, without exception and without regard to the issues raised, be submitted to the COC for approval. The Local seizes upon language enumerating specific issues for the COC's review, and urges this as support for its argument that the COC only has authority over those specifically designated areas. However, the broad requirement that the COC review all changes of operations without regard to the presence of those designated issues which the Local points up, dictates a different conclusion. Also, the decisions brought to the attention of the court indicate that the COC has routinely exercised broad jurisdiction over proposed changes of operations. (Palazzo affidavit, Exh. C). Previous practice is a valid consideration in determining jurisdiction. *Local 1416, I.A.M. v. Jostens, Inc.,* 250 F.Supp. 496, 501 (D.Minn.1966). The unambiguous language of the NMFA and the undisputed facts of record support only one conclusion; that the COC possessed jurisdiction over the Company's proposed change of operations.

There being no material issues of fact in dispute, and for the reasons stated above, summary judgment in favor of the Defendant will be granted. Because of our decision on this issue we do not address Defendant's motion to dismiss for failure to join necessary parties. Finally, we do not find Plaintiff's action to have been in bad faith and Defendant's request for attorney's fees and costs will be denied.