**UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC, on Behalf of LOCAL UNION NO. 14505, Plaintiffs,**

v.

**LOGAN PARK CARE CENTER, INC., Defendant.**

Civ. A. No. 2:86–0303.

United States District Court, S.D. West Virginia, Charleston Division.

April 24, 1986.

James F. Wallington, Robin Jean Davis, William T. Payne, Hostler & Segal, Charleston, W.Va., for plaintiffs.

Charles F. Woody, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pursuant to a hearing held on April 7, 1986, the Court granted the Plaintiff union's motion for a preliminary injunction. The Defendant employer now moves to stay the preliminary injunction order.

The employer supports its motion with the recently announced decision of *AT & T Technologies, Inc. v. Communication Workers of America,* —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This Supreme Court decision was handed down on the same date as the above referenced hearing. For the reasons enunciated below, the Court is unpersuaded that this case in any manner affects the correctness of the Court's earlier announced ruling.

The parties to this action entered into a labor contract on September 20, 1984. The contract was signed by the president of the employer and by several officials of the district and local union. The contract cov-ered all aspects of the employment relationship in its 42 pages. Appended as Exhibit "A" to the contract was a scale of the wages to be paid over the life of the contract. The parties disagree over how this scale is to be applied. Not surprisingly, the employees would be paid less under the employer's interpretation than under the union's interpretation.

■ The union filed a grievance and sought to arbitrate the disputable wages. The employer has refused to arbitrate. The employer's position—asserted throughout these proceedings and reasserted here—is that it does not have a contract with the union and, therefore, does not have an obligation to proceed to arbitration. The employer's theory of the case is that since it interprets the wage scale one way and the union interprets it another way, there was no meeting of the minds on an essential element of the contract and, consequently, the contract is void. The employer further argues that the Court should, in the first instance, decide the question of whether a contract exists between the parties, and that this question should not be deferred to the arbitrator. A few general principles have evolved in the area of labor arbitration. Foremost, there is no legal obligation to submit to arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Therefore, whether a given issue must be arbitrated is decided "on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). The question of whether the parties have entered into an agreement containing an arbitration requirement is not for the arbitrator to decide; it must be decided by the Court. *United Steelworkers v. Warrior & Gulf Navigation Co., supra; Rochdale Village, Inc. v. Public Service Emp. Union, Local No. 80, International Brotherhood of*

*Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 605 F.2d 1290 (2d Cir.1979). These principles, established more than twenty-five years ago in the famous steelworkers trilogy, *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrier & Gulf Navigation Co., supra; United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), have established a strong presumption of arbitrability in the area of labor relations. *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

■ Keeping in mind the above principles, the Court is cognizant of its limited role in this type of case. That role can be summarized in the form of two dispositive questions: (1) "Is there a valid agreement to arbitrate?" (2) "Does the agreement cover the asserted dispute?" *International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.,* 529 F.2d 574 (7th Cir.1976).

■ In *AT & T Technologies,* the lower courts ran afoul of the principle that the court's province is to determine whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular dispute. The lower courts had deferred to arbitrability question to the arbitrator. The Supreme Court reversed. The issue in *AT & T Technologies* involved an interpretation of the arbitration clause contained in the parties' contract. In the case at bar, however, there is no attack on the arbitration clause itself. Setting aside the wage clause dispute momentarily, the parties surely cannot contend that they did not have an agreement to arbitrate disputes which developed under the contract. The parties agreed that the grievance and arbitration procedure set forth in the contract would be the "sole and exclusive means to resolve disputes" which arise "out of or under [the contract], the interpretation, application or performance thereof, the terms and conditions of employment or local trouble of any kind."

The Court, in fulfilling its role in this type of process, explicitly held at the April 7 hearing that the parties had agreed to arbitrate disputes arising under the contract and that the instant dispute was covered by that agreement. In arguing that the current contractual dispute over wages manifests a failure of the respective minds to meet, the employer seeks to have the Court step up on a slippery slope indeed. The inevitable slide down that slope would result in the evisceration of the national labor policy favoring arbitration of contractual disputes.

In almost every instance involving a dispute over the interpretation of a labor contract, a party could claim that there was no "meeting of the minds" even where the contract is tendered in evidence for the Court to scrutinize. Extensions of such an approach would inevitably entangle the Court in the substantive terms of the contract. In *AT & T Technologies,* the Seventh Circuit held that deciding the arbitrability issue "would entangle the court in interpretation of substantive provisions of the collective bargaining agreement and thereby involve consideration of the merits of the dispute." *Communications Workers of America v. Western Electric Company, Inc.,* 751 F.2d 203, at 206 (7th Cir. 1984). As noted, the Supreme Court reversed. That reversal was based, however, on the fact that the threshold question of arbitrability had been deferred to the arbitrator. Again, the Court here is not confronted with the proper scope or validity of the arbitration clause. It must be remembered that "[i]t is the arbitration clause, not the substantive contract clause in controversy, which governs whether a dispute must be submitted to arbitration." *Haig Berberian, Inc. v. Cannery Warehousemen,* 535 F.2d 496, 499 (9th Cir.1976).

It is true in a certain sense that the Court must determine whether a contract exists between the parties. *Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC v. Ratner Corp.,* 602 F.2d 1363 (9th Cir.1979). But that general principle cannot be applied to reach the result

desired by the employer here. If the Court decide to determine whether the parties had a "meeting of the minds" on the terms of wage increases, the role of the arbitrator would in all probability be reduced to a hollow formality. The Court believes that when parties enter into a labor contract and agree to submit disputes arising from the contract to an arbitrator, they must also be presumed to have contemplated that the arbitrator would hear disputes arising from differing interpretations of the contract. To hold that different interpretations of a substantive clause creates a threshold issue for the courts, would be to fashion an exception quite capable of swallowing the rule—the rule being that contractual disputes shall be resolved by arbitration when the parties have agreed to do so.

■ The case of *International Brotherhood of Electrical Workers, Local 1228, AFL–CIO v. Freedom WLNE–TV, Inc.,* 760 F.2d 8 (1st Cir.1985) presents a helpful analogy. The employer and the union had entered into a one-year contract with a provision therein extending the contract unless changed or terminated in accordance with the contract. Near the end of the contract's term the parties tried to change some of the contract provisions, but the negotiations failed. After the primary term the union filed a grievance over work being carried out by nonunion employees. The employer refused to arbitrate because the work was done after the contract had terminated. The union argued that the contract had not terminated. The question which the union sought to arbitrate was to what extent the contract continued in effect beyond the stated expiration date. The First Circuit affirmed the district court's order directing arbitration. In doing so, the Court held that where "the determination of whether a contract is still in effect depends solely upon construction of the collective bargaining agreement, the issue of contract termination may appropriately be decided by the arbitrator." *Id.* at 10. This is true, said the First Circuit, notwithstanding that "it is up to the court to determine, in the first instance, whether

the parties have entered into a contract which imposes the duty to arbitrate ... and whether that contract is still binding upon them...." *Id.*

A case coming very close to being on all fours with this action is *International Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.,* 529 F.2d 574 (7th Cir.1976). In *Carl A. Morse, Inc.,* the employer agreed to abide by a master contract entered into by an international union and a trade association. The contract specified that all but six counties of Wisconsin were covered by its terms. Immediately after the employer signed the contract the Union filed a grievance alleging that the employer was violating the contract by employing nonunion workers at another job site ostensibly covered by the contract. The employer refused to arbitrate, arguing that the contract was executed under the belief that it did not apply to subcontracts already executed. At one point in the proceedings to compel arbitration, the employer argued that the contract "should be altered by a decree of reformation for mistake, or invalidated for fraud in the inducement." *Id.* at 577. Hence, the employer's argument was quite similar to the "meeting of the minds" argument made by the employer here.

The Seventh Circuit affirmed the district court's order to arbitrate. The following portion of the court's opinion aptly discusses the instant legal issue. Although lengthy, the language is believed to demonstrate why the arguments of the employer are misdirected.

"Here the employer has raised no question of the validity of the agreement to arbitrate. The objections of mistake, fraud, and one of authority are directed not to the arbitration clause of the collective bargaining agreement, but rather to those clauses concerning coverage, temporal and geographic, which would apply its provisions retroactively, to subcontracts already let and spatially, to the Wausau project as well as the Madison job. The employer's position does not

deny any contractual duty to arbitrate at all, no matter what the subject of the asserted grievance. Its attack is confined to the validity of the specific, substantive provisions of the contract which are claimed to outlaw its pre-existing Wausau subcontract. The duty not to subcontract under these conditions at this site is called into question, not the machinery for enforcing such a duty or determining whether it exists.

This case thus stands in contrast with cases like *Local 1416, Int'l. Ass'n. of Machininsts v. Jostens, Inc.,* 250 F.Supp. 496 (D.Minn.1966), where reformation of the arbitration clause itself was sought on grounds of mutual mistake, leaving the grievance to other methods of resolution. Here the reformation sought would eliminate the underlying duty, depriving the grievance of merit, and leaving nothing for any form of resolution, either arbitrable or judicial.

The separate ability of the arbitration clause from other provisions of an agreement was declared by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04 [87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270] ... (1967). The invalidity of other sections of an agreement neither affects nor undermines the binding force of its arbitration provisions, so long as those provisions are not directly and specifically attacked."

*Id.* at 577–78.

In accordance with the reasoning outlined above, the Court denies the employer's motion to stay the preliminary injunction. That injunction, together with all attendant terms and conditions, shall continue in full force and effect.

■ The Court now turns to the union's request for attorney fees and costs. For reasons articulated herein and from the bench at the conclusion of the hearing, the Court finds that the employer's position in opposing arbitration is and was not substantially justified. The parties had a contract which provided for arbitration. A dispute over wages clearly falls within those issues subject to arbitration. That the employer would not submit to arbitration runs counter to an obligation imposed by well-settled law.

Counsel for the employer has offered scant legal authority in support of the tenuous theory which was advanced. The recent Supreme Court decision in *AT & T Technologies* is easily distinguishable. Moreover, that decision declared no new principle of law. It merely reaffirmed case law which had developed in the 60's and 70's.

Therefore, the Court grants the union's motion for fees and costs. Counsel for the union having properly documented the sum of $2,194.51 as the fees and costs related to the enforcement of arbitration, the Court ORDERS the employer to pay that sum to the union or its representative within fourteen days of the date this Order is entered.