**INTERNATIONAL UNION OF OPER-ATING ENGINEERS, LOCAL UNION NO. 139**

v.

**CARL A. MORSE, INC.**

No. 74 C 235.

United States District Court,
E. D. Wisconsin,
Milwaukee Division.

Dec. 19, 1974.

On Motion to Reconsider, Jan. 13, 1975.

154

Thomas P. Krukowski, Goldberg, Previant & Uelmen, Milwaukee, Wis., for plaintiff.

Victor M. Harding, Whyte, Hirschboeck, Minahan, Harding & Harland, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This case represents one aspect of a continuing effort on the part of the International Union of Operating Engineers, Local Union No. 139 (hereinafter "the Union") to compel an employer, Carl A. Morse, Inc. (hereinafter Morse) to enter into arbitration in regard to a labor dispute dealing with a building

project that the defendants have commenced at Wausau, Wisconsin. The dispute is alleged to fall within the provisions of a collective bargaining agreement which was, in fact, executed on March 25, 1974, but is by its terms retroactive to June 1, 1973.

The Union brings this action seeking an order to compel the defendant Morse to enter into arbitration; the defendant has set forth its objections to arbitration, and contends that this Court should settle the merits of the dispute because the issues presented concern the intent of the parties in creating the Agreement.

## I. FACTUAL BACKGROUND

From the record before the Court at this time, it appears that the essential facts behind this dispute are not contested by the parties, and establish the following situation.

The defendant Carl Morse is engaged in the construction business as a general contractor, and in March of 1974 was pursuing major construction projects at both Madison and Wausau, Wisconsin.

At the Wausau project, the defendant had subcontracted all of its work to various other construction firms, one of which was a masonry contractor, McWad, Inc. The employees of McWad, members of the Laborer's Union, AFL–CIO, had been operating forklift trucks at the Wausau building site for some time prior to March 1974, in connection with their other construction duties there. At the Madison project, on the other hand, the duties of forklift truck operation had been assigned to the Operating Engineer's Union since June 1, 1973.

On March 25, 1974, the defendant and the Operating Engineers Union entered into a collective bargaining agreement in Madison (the "Agreement"). Under the terms of this Agreement, its provisions were to be retroactive to June 1, 1973 to reflect the fact that the Operating Engineers Union had been associated with the employer since that time.

The current dispute is a result of that collective bargaining agreement. The plaintiff Union maintains that the terms of the contract are statewide in character such that the plaintiff is in violation of the Agreement by using Laborer's Union personnel in various capacities at the Wausau project. The general contractor, in return, maintains that the contract must be read so as to reflect the actual intent of the parties that the Agreement be limited to only the Madison building project.

The basic dispute here was formalized in a grievance which was drawn up by the Union on March 26, 1974; the Union charged therein that various pre-job conference requirements and work assignment requirements had been violated or ignored by the defendant, in conflict with Article IV, § 4.1, Article I, § 1.3 and Article VII, § 7.10 of the Agreement. When the parties were unable to reach an accord as to these issues, the Union demanded that the parties proceed to final and binding arbitration in accordance with the arbitration provisions of the Agreement that was then in effect between them; the employer-defendant has refused to enter into any arbitration of these matters.

Because of the foregoing circumstances, the Union filed a complaint with the Wisconsin Employment Relations Commission on May 23, 1974; the Union alleged therein a violation of Wisconsin Statutes § 111.06(1)(a) and (f) by the defendant's failure to arbitrate the dispute described above. In response to this attempt to compel arbitration through Wisconsin administrative procedure, the defendant filed a Notice and Petition of Removal, to bring the Union's action to this Court. The defendant claimed that removal was appropriate in this case in that the proceeding before the Wisconsin Employment Relations Commission constituted a civil action over which the District Courts of the United States have original jurisdiction pursuant to § 301 of the National Labor Relations Act, 29 U.S.C. § 185, and in that the case was otherwise with-

in the provisions of the federal removal statute, 28 U.S.C. § 1441.

The plaintiff does not contest the propriety of this removal, but rather now petitions this Court to enter an Order to compel the defendant to arbitrate the issues forming the bases of the dispute, in accordance with the provisions of the collective bargaining agreement that was signed on March 25, 1974.

The defendant has filed an answer to the plaintiff's complaint here, and has set forth various affirmative defenses to support its position that arbitration is not appropriate at this time.

## II. THE ARBITRATION SOLUTION

It is admitted that the plaintiff and defendant here are parties to a collective bargaining agreement dated March 25, 1974, and that this agreement provides a private arbitration procedure for the resolution of the disputes related thereto.

The collective bargaining agreement, appended as Exhibit "A" to the petition to compel arbitration that was filed by the plaintiff on August 28, 1974, states in pertinent part:

"ARTICLE   IX—ENFORCEMENT

Section 9.1—ARBITRATOR: All grievances, disputes or complaints of violations of any provisions of this Agreement shall be submitted to final and binding arbitration by an arbitrator appointed by the Wisconsin Employment Relations Commission. The arbitrator shall be a member or staff member of the WERC. The arbitrator shall have sole and exclusive jurisdiction to determine the arbitrability of such a dispute as well as the merits thereof. Written notice by registered return receipt letter of a demand for arbitration shall be given to the Contrator and Association or as applicable to the Union at its Milwaukee headquarters. The Contrator and Association as the case may be shall agree in writing within seven (7) calendar days to arbitrate the dispute.

"Both parties shall cooperate to have the case heard by an arbitrator within seven (7) calendar days of the written agreement to arbitrate, provided an arbitrator is available. The arbitrator shall have the authority to give a bench decision at the close of the hearing, unless he shall deem the issues to be unusually complex, and thereafter he shall reduce the award to writing. Grievances over discharge or suspension shall be filed no later than ten (10) calendar days after the matter is brought to the attention of the Business Representative of the Union and in no event later than thirty (30) calendar days after the event giving rise to the grievance for all grievances involving monetary liability excluding Health and Welfare and Pension benefits."

It is further admitted by both parties that this Court has jurisdiction over this case under the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185: the plaintiff has conceded this fact in the Petition to Compel Arbitration that it filed on August 28, 1974, and the defendant has conceded this fact in the Petition for Removal that it filed on June 11, 1974.

Where jurisdiction has been established, and where it is apparent that the case presents a question of the enforcement of an arbitration clause in a written agreement to arbitrate, the provisions of the United States Arbitration Act, 9 U.S.C. § 1 et seq., become relevant. That statute states at § 4 that:

"A party aggrieved by the alleged failure, neglect, or refusal, of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' no-

tice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied of the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

■ An action commenced in a federal court under the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, brings the action within that portion of § 4 of the Arbitration Act which requires jurisdiction under Title 28. See, *e. g.*, Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150, 351 F.2d 576 (7th Cir. 1965); Silvercup Bakers, Inc. v. Strauss, 245 F.Supp. 199, rev'd on other grounds, 353 F.2d 555 (2nd Cir., 1965).

■ Once the Arbitration Act is held to be otherwise applicable, the Court must determine whether § 1 of that Act operates to except a particular case. Under the terms of § 1, Title 9 is limited such that nothing therein contained is to apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce. It seems clear that if this exception is applicable, the relief envisioned in § 4 is not available in this case. In the *Scalzitti* case, *supra*, Judge Hastings found that the collective bargaining contract there at issue was not a "contract of employment" such as to except the applicability of the provisions of 9 U.S.C. § 3; the Court deems that case to be dispositive of the question here in regard to 9 U.S. C. § 4. Here as there, the Court is faced with a collective bargaining agreement between a local branch of the International Union of Operating Engineers and an employer; the Court is of the opinion that the conclusion reached in *Scalzitti,* that the phrase "foreign or interstate commerce" as used in the exemption was not intended to apply to such a collective bargaining agreement, is controlling.

■ Once it is determined that the case falls within § 4 of the Arbitration Act, 9 U.S.C. § 1 et seq., and once it is determined that no exemption to the provisions of Title 9 is operative, there remains only one major issue for the Court's resolution: in order for the Court to compel arbitration of the issues of a certain dispute, the Court must determine that the issues presented in the case fall within the scope of those that the party has agreed to submit to the arbitrator under the terms of the arbitration clause of the relevant arbitration agreement.

"The function of a court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

"Close scrutiny of the arbitration clause in the contract is required. If the issues can be fairly said to come within the coverage of the arbitration clause, a motion to stay proceedings pending arbitration or an order directing arbitration, as the case requires, must necessarily follow." (cases cited) Pietro Scalzitti v. International Union of Operating Engineers, Local No. 150, *supra*, 351 F.2d at p. 579.

■ The Court is of the opinion that the language of the arbitration clause at issue here is sufficiently broad as to encompass each question presented by this dispute. At Article IX, § 9.1, the Agreement clearly provides in broad and general language that:

"All grievances, disputes or complaints of violations of any provisions

of this Agreement shall be submitted to final and binding arbitration . . . The arbitrator shall have sole and exclusive jurisdiction to determine the arbitrability of such a dispute as well as the merits thereof."

The charges that have been made by the plaintiff allege violation of three specific provisions of the Agreement; these questions clearly fall within the terms of the clause quoted above. The defendant contends that the issues it has raised concern the intent of the parties in creating the contract, and the propriety of reformation of the contract to conform to the alleged actual intent of the parties; at best this creates a question of whether the issues presented are arbitrable, and this question too is reserved to the domain of the arbitrator under the provisions of the Agreement.

■ The Court is cognizant of that portion of § 4 of the Arbitration Act which provides that,

"if the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."

This does not however alter the Court's conclusion that the validity of the creation of the contract is an issue the arbitrability of which is reserved for the arbitrator under the provisions of the contract here at issue. The Court is of the opinion that nothing in the Arbitration Act prevents the parties from making a binding decision to relegate to the arbitrator in the first instance the decision as to the arbitrability of the defense of lack of contractual intent. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir., 1965) (defense of waiver may be made arbitrable notwithstanding the terms of § 4 of the Act).

In light of the fact that the language of the arbitration clause contemplates that the arbitrator is to first decide the arbitrability of every issue concerning complaints of violation of the provisions of the Agreement, the Court determines that the issue of the contractual intent of the parties must first go through his scrutiny.

■ In Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), Judge Medina ruled that a claim of fraud in the inducement was to first go to the arbitrator where the contract at issue established procedures for arbitration in terms that were as broad as those of the Agreement in this case; this was true notwithstanding any other provisions of the Federal Arbitration Act. In accordance with the opinion of Judge Medina, this Court feels that any doubts as to the construction of the Act are to be resolved with a view toward its liberal policy of promoting arbitration so as to implement the original intent of the parties and so as to ease the congestion of the Court's calendar; here too there seems to be no basis for concluding that the issues relating to the formation of the contract are of such a character that only the Court can resolve them. Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra*, 271 F.2d at 410; World Brilliance Corp. v. Bethlehem Steel Co., *supra*, at p. 365.

The Court would add that the conclusion that arbitration is to be required is supported by the general preference for the private arbitration process that prevails in federal courts. In deciding that the issues before him were arbitrable within the meaning of an arbitration clause of a relevant collective bargaining agreement, Judge Campbell, speaking for a Seventh Circuit panel recently stated that:

" . . . [T]his conclusion [of arbitrability] is enhanced by the strong public policy in favor of arbitration which was persuasively enunciated in the Steelworkers Trilogy. [citations omitted] The often discussed presumption of arbitrability for labor disputes was recently affirmed by the Supreme Court in Gateway Coal Co. v. Mine Workers, 414 U. S. 368, 377–380, 94 S.Ct. 629, 636–638,

38 L.Ed.2d 583, 592–593, (1974). While the arbitrability of the disputes involved here may not be free from doubt, the Trilogy has instructed that all such doubts be resolved in favor of arbitration." Inland Steel Co. v. United Mine Workers Local 1545, et al., 505 F.2d 293 (7th Cir., 1974).

The wisdom of such a policy in favor of arbitration seems buttressed as the Court considers the equitable factors in the case at bar.

The defendant's Answer alleges that "the contract was executed by the Madison project superintendent under the belief that it did not apply to sub-contracts already entered into by the Morse Company." The Court is uncertain whether this "belief" was a question of the superintendent being ignorant of the defendant's other commitments in regard to the Wausau building project—or whether it was a question of an unjustified assumption on the part of the superintendent in regard to the scope of the terms of the Agreement itself.

In either case, for the defendant to permit its agents to execute the Agreement in this beclouded fashion, and then to subsequently seek refuge in the resulting uncertainties, partakes of the flavor of equitable estoppel.

Yet, if the employer has conducted itself in a questionable manner, so too has the Union. If the Union was, in fact, aware of the work allocation conditions at the Wausau building project prior to March 25, 1974, and if it recognized that the retroactive nature of the Agreement would create material ambiguities in that regard, the Union's actions in entering into the Agreement on March 25, despite such knowledge and their filing a written grievance only one day after the Agreement was executed, certainly draws into question its good faith as well.

While the terms of the Agreement envision that it will be construed within its four corners, conduct such as that described above must be relevant in an equitable action for reformation, where the question of clean hands can arise.

If it is necessary to balance the equities of this case in order to reach a just decision, it would seem most appropriate to defer to the expertise of an arbitrator at the outset; deference to the arbitrator not only seems to implement the intent of the parties as expressed in the Agreement, but also allows the initial decision in the case to be made by an individual that has the insight required to perceive the various competing motivations and intentions.

## III. THE DEFENDANT'S OTHER CONTENTIONS

When the parties appeared before the Court for oral argument on December 11, 1974, the defendant urged that no arbitration was appropriate, but limited its legal basis for that claim to the theory that arbitration was not to encompass charges of lack of contractual intent. This argument has been rejected by the Court in this memorandum opinion.

The defendant has raised other affirmative defenses in the answer it filed on September 23, 1974. Although no briefs have been filed in support of these defenses, the Court will now proceed to consider the merits of the claims they present. Any rights that the defendants may have had in this regard are to be deemed waived. Rule 6.01, Local Rules of the United States District Court for the Eastern District of Wisconsin.

### i) *Mootness*

In the Answer filed on September 23, 1974, the defendant contends that the grievance in this case became moot when on April 18, 1974, representatives of the Union and Morse held a pre-job conference in Wausau, Wisconsin. The Court can summarily dismiss this patently invalid argument by observing that the plaintiff's claim that defects existed as to the pre-job conference provisions of the Agreement constitutes only one aspect of the dispute here at issue. Furthermore, the plaintiff's claim for money damages for past violations on the part of the defendant clearly presents issues of continuing signifi-

cance and collateral consequence so as to keep this a "live" case or controversy and within the jurisdiction of the Court in terms of Art. III of the United States Constitution. *See, e. g.,* Liner v. Jafco, Inc., 375 U.S. 301, 304–309, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); H. M. Hart & H. Wechsler, The Federal Courts and the Federal System, 110 (1973 ed.). The case here is by no means moot.

ii) *Exclusive Jurisdiction of the N.L.R. B.*

The defendant next claims that exclusive jurisdiction over this dispute is vested in the National Labor Relations Board by virtue of its exclusive jurisdiction over labor disputes between employers and unions involving interstate commerce, and by virtue of the provisions of §§ 8(b)(4)(D) and 10(k) of the National Labor Relations Act, 29 U. S.C. §§ 158(b)(4)(D) and 160(k). The Court finds this a most curious argument in light of the fact that it was through defendant's removal petition that the case is in this court. The Court will rule on the argument nonetheless.

■ A review of the authorities on this issue convinces the Court that these arguments are without merit. In Carey v. Westinghouse Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), Justice Douglas clearly held that § 8(b)(4)(D) of the National Labor Relations Act does not deal with a controversy anterior to a strike, and does not provide machinery for resolving such dispute absent a strike. Though as in *Carey*, this case may present a "jurisdictional" dispute between two unions, the authority given the Board to exert its jurisdiction hinges upon the existence of a strike or a threat of strike. Carey v. Westinghouse Corp., *supra*, at p. 263, 264, 84 S. Ct. 401. The parties have admitted in open court that a strike is neither currently in progress nor proximately threatened. The provisions of the National Labor Relations Act that are urged by the defendant are inapplicable. Furthermore, even if we were to assume that a strike was threatened, the *Carey* opinion clearly indicates that there is to be no barrier to the use of any private arbitration procedure:

"By allowing the dispute to go to arbitration, its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace," . . . and which may be dispositive of the entire dispute, are encouraged." Carey v. Westinghouse Corp., *supra*, at p. 272, 84 S.Ct. at p. 409. *See also,* NLRB v. Plasterers' Union, 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971).

The Court rejects the argument that exclusive jurisdiction in this case lies anywhere. The parties are free to proceed with private arbitration in accordance with the terms of their Agreement.

iii) *Money Damages As An Unlawful Exaction for Services In Violation of 29 U.S.C. § 158(b)(6)*

The defendant finally claims that the money damages sought by the Union in this case constitute a violation of § 8(b)(6) of the National Labor Relations Act, 29 U.S.C. § 158(b)(6) since if it prevails as to its damage claims, the Union, through the Court, will cause an employer to pay money to a union in the nature of an exaction for services not rendered. The Court is of the opinion that, considering both the legislative history of this provision and the treatment it has received from the courts considering it, the contention is without merit.

In Rabouin v. N.L.R.B., 195 F.2d 906 (2nd Cir., 1962), Justice Clark, then a Circuit Judge, specifically held that a union's demand for damages equal in amount to the wages paid a non-union driver was not an attempted exaction in violation of § 8(b)(6). The Court there stated specifically that:

"[T]o read into the section a requirement that the work must have been done by the one to receive the wages not only would bar a justified claim such as this one on the part of

one wrongfully deprived of a job under the contract, but would also warp § 8(b)(6) into a broader provision that it was intended to be." Rabouin v. N.L.R.B., *supra*, at p. 912.

In reaching this conclusion Justice Clark relied on the case of American Newspaper Publishers Association v. N. L.R.B., 193 F.2d 782 (7th Cir., 1951) where after a thorough review of the legislative history of § 8(b)(6) of the Act, Justice Swaim came to the conclusion that that provision of the Act was to prohibit the power of a union to demand money only where no work whatsoever had been done; it was to ensure that no union would be able to exact payment from the employer for services which he does not want, does not need, and is not even willing to accept.

The Court must conclude that the provisions of § 8(b)(6) do not operate to bar the Union's claim here for money damages, but rather, as noted in the opinions above, are more directly aimed at preventing the practice of "feather-bedding." The plaintiff has failed to cite even one case as authority for its contentions in this regard; the Court must reject its claim.

### IV. CONCLUSION

The foregoing memorandum opinion finds that a valid collective bargaining agreement exists as between the parties here, and that the private arbitration provisions thereof cover the arguments that have been set before this Court. In that jurisdiction exists, in that this Court is governed by the terms of 9 U. S.C. § 4, and in that the defendant has shown no substantial reason to hold otherwise it is hereby ORDERED that the parties enter into arbitration, in accordance with the provisions of the collective bargaining agreement currently in effect between them.

The Court is of the opinion that, in view of the provisions of the Arbitration Act, there has already been too much delay in the resolution of this dispute; it is hoped that the parties can proceed to arbitration forthwith, and that a speedy decision on the merits of this controversy can thereby be effected.

### ON MOTION TO RECONSIDER

On December 20, 1974 this Court entered a Memorandum and Order in the above-entitled action; by the terms thereof the defendant was to be compelled to enter into arbitration with the plaintiff as to those disagreements forming the basis of this suit.

On January 7, 1975, the defendant filed a motion urging that this Court reconsider and vacate the Order of December 20, 1974; the plaintiff has filed a brief in opposition to this request.

For the reasons that follow, the Court is of the opinion that the defendant's motion has no merit, and must be denied.

#### I.

The factual background of this litigation has been set forth in detail in the Order dated December 20, 1974 and need not be repeated here. The defendant's objections focus upon various questions of law and can be resolved at this time without a recitation of the events leading to the suit.

#### II.

In the brief filed in support of its motion to reconsider and vacate, the defendant maintains that this case presents various genuine issues of material fact as to whether there exist equitable defenses to the collective bargaining agreement upon which the plaintiff's claims are based. It is urged that, as a matter of law, such questions are to be resolved by this Court before an Order to compel arbitration may be considered; the brief cites various cases that are allegedly in support of this position: International Ladies' Garment Workers v. Ashland Industries, Inc., 488 F.2d 641 (5th Cir., 1974), cert. denied 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974); West Coast Telephone Co. v. Local Union, etc., 431 F.2d 1219 (9th Cir., 1970); Associated Milk Dealers, Inc. v. Milk Drivers Union, etc., 422 F.2d 546 (7th Cir., 1970); and

Central Aviation & Marine Corp. v. International Union, etc., 319 F.2d 589 (2d Cir., 1963).

The defendant has supplied the Court with various excerpts from the hearing held December 11, 1974 to illustrate that these contentions were made clear prior to the issuance of the Order questioned here; the defendant urges that said Order be vacated, or, in the alternative, held in abeyance pending submission of evidence and resolution of these claims by the Court.

### III.

The Court would note that it is and has been aware of the fact that the equitable arguments to which the defendant makes reference exist in this case; it was to resolve these very contentions that arbitration was heretofore ordered. The questions deal with the problem of whether or not equitable reformation of the collective bargaining agreement is appropriate; the Court believes the Order of December 20, 1974 makes it very clear that these issues are to be submitted to the arbitrator at the outset, in accordance with the terms of the relevant collective bargaining agreement. The cases cited by the defendant in opposition to this conclusion do not persuade the Court that the decision is erroneous.

The United States Supreme Court has held that an equitable defense to a collective bargaining agreement is to be referred to the arbitrator where the relevant arbitration clause is of a very broad nature. International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).

The arbitration clause at issue here states, in pertinent part, as follows:

"ARTICLE IX—ENFORCEMENT

Section 9.1—ARBITRATOR: All grievances, disputes or complaints of violations of any provisions of this Agreement shall be submitted to final and binding arbitration by an arbitrator appointed by the Wisconsin Employment Relations Commission. The arbitrator shall be a member or staff member of the WERC. The arbitrator shall have sole and exclusive jurisdiction to determine the arbitrability of such a dispute as well as the merits thereof."

Although it does not contain the precise language that "any difference" is to be arbitrated, the Court concludes that this arbitration clause is to be interpreted in accordance with the *Flair Builders* opinion. The defendant maintains that the clause should be more narrowly construed such that the only arbitrable grievances, disputes, or complaints of violations are those relating to the terms of the agreement. The Court will not so strain what it considers to be the plain meaning of the arbitration provision: all grievances, all disputes and all complaints of violation of the provisions of the agreement are to go to arbitration. The Court feels that section 9.1 creates three categories of arbitrable disputes, and is not limited to only those relating to interpretation of the terms of the contract itself.

The Court considers *Flair Builders* to be controlling: the equitable defenses to the collective bargaining agreement will be referred to the arbitrator at the outset.

The defendant has provided this Court no material authority to indicate that the United States Supreme Court has changed its position in this regard. While the Court notes that certiorari was denied in the *Ashland Industries* case, *supra,* it seems well established that the denial of a petition for writ of certiorari by the Supreme Court carries no precedential weight whatsoever. *See, e. g.,* Ahern v. Murphy, 457 F.2d 363 (7th Cir., 1972), citing Maryland v. Baltimore Radio Studios, 338 U.S. 912, 919, 70 S.Ct. 252, 94 L.Ed. 562 (1950).

Much of the authority cited by the defendant appears to be distinguishable from the case at bar: in *Associated Milk Dealers, supra,* for example, the Court carefully points out that its decision is

based in part on the fact that the contract at issue there does not relegate the decision as to the arbitrability of a dispute to the arbitrator; the agreement at issue here clearly does contain such a clause at section 9.1.

To the extent that the authority cited by the defendant is inconsistent with the *Flair Builders* opinion, this Court chooses not to follow it. The Order of December 20, 1974 will not be reconsidered or vacated at this time.

The Court would reiterate its opinion that the peculiar factual circumstances leading to the execution of this labor agreement present questions most easily resolved by an arbitrator with an expertise in this regard.

## IV.

The Court is of the opinion that no further material objections have been raised by the defendant's motion to reconsider and vacate.

In the brief submitted with that motion, counsel for the defendant argues that he was misled by the fact that the plaintiff denominated his motion under 9 U.S.C. § 4 a "Petition to Compel Arbitration." As noted in the plaintiff's responding brief, the defendant has cited no authority to support the position that whatever assumptions were made in this regard were *legitimate, material or prejudicial.* The Court finds that the Petition to Compel Arbitration clearly illustrated its purpose and statutory bases; the Court is of the opinion that the pleadings reveal that the defendant was aware of the true nature thereof.[1]

## V.

For the foregoing reasons, the defendant's motion to reconsider and vacate the Order of December 20, 1974, is denied. The Court feels that, especially in view of the authority cited herein, its conclusions there were proper.

---

1. The record establishes that a letter dated September 5, 1974 was conveyed to counsel for the plaintiff indicating that counsel for the defendant considered the Petition to Compel Arbitration to be a motion to which a responsive brief was to be directed. The letter purports to authorize an additional two weeks for the preparation and filing of such a brief.

The Court would note that no such brief was ever submitted. The Court would instruct counsel for the defendant that a failure to timely file a brief in response to a motion is a waiver of that right, and that any extensions of time in that regard must be authorized by the Court to be effective. Rule 6.01, Rules of the United States District Court for the Eastern District of Wisconsin.