F. O'Neil GRIFFIN, Plaintiff,

v.

SEMPERIT OF AMERICA, INC., a New York Corporation, Defendant.

Civ. A. No. 76–H–807.

United States District Court,
S. D. Texas,
Houston Division.

June 7, 1976.

Richard P. Keeton, Eleanor S. Glass, Alan Schulman, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for plaintiff.

Michael R. Waller and Fred Stumpf, Childs, Fortenbach, Beck & Guyton, Houston, Tex., and Stephen Rachlis, Wachtell, Manheim and Grouf, New York, New York, for defendant.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

This dispute arises out of a contract in which plaintiff as guarantor executed a guaranty agreement with the defendant. Specifically, plaintiff guaranteed to defendant prompt and full payment of all indebtedness and liabilities at any time owing to the defendant under the terms of a security agreement between defendant and plaintiff's brother.

Plaintiff here contends that he was fraudulently induced to sign the guaranty agreement, which contains a provision for arbitration. Plaintiff's complaint, which was filed on May 13, 1976, was followed one day later by a motion for a temporary restraining order.

Both parties have provided this Court with briefs covering the legal issues raised in plaintiff's motion. The controlling issue

in this action is whether this Court should resolve the question of fraud in the inducement, or whether this question is one for arbitration. After carefully considering plaintiff's verified complaint and the briefs which have been filed in this action, the Court has determined that plaintiff's motion to enjoin arbitration preparations scheduled to proceed on June 2, 1976, must be denied. In light of the Court's conclusion that the issue of fraud in the inducement should be referred to arbitration, defendant's motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 (1975), to stay this action pending arbitration is granted.

## II. BACKGROUND

Plaintiff, presently a citizen of Colorado, was formerly a resident of Houston, Texas. Defendant is incorporated under the laws of New York and its principal place of business is New Jersey. Jurisdiction is based solely on diversity.

Defendant imports tires and related products manufactured overseas. On September 3, 1971, defendant entered into a security agreement with Public Service Tire of Texas, Inc., a Texas corporation, and its president, a Mr. Harold M. Griffin, pursuant to which imported products were consigned to Public Service as exclusive distributor for sale at wholesale and retail. Plaintiff in this action is the brother of Harold M. Griffin.

On or about September 14, 1971, plaintiff entered into the above-mentioned guaranty agreement with defendant. Both the security agreement [1] and the guaranty agreement [2] contain arbitration provisions calling for arbitration before the American Arbitration Association in New York City. On or about April 1, 1976, defendant gave formal notice to plaintiff of its demand for arbitration of the obligation of plaintiff to make payment of the outstanding indebtedness of Public Service to defendant. Defendant originally alleged a claim of $238,772.14, but later modified such claim to approximately $200,000.00. Plaintiff was notified by the American Arbitration Association that a panel of arbitrators and a hearing date would be selected on or shortly after May 16, 1976.

On or about April 23, 1976, plaintiff commenced an action for injunctive relief in federal district court in Denver, Colorado, seeking to enjoin the arbitration, alleging as he does in the present action that the guaranty agreement signed by him was induced by fraud. On May 8, 1976, all relief sought by plaintiff in the Colorado action was denied and, after the court had heard evidence on fraudulent inducement, that action was dismissed for lack of in personam jurisdiction over the defendant. *Griffin v. Semperit of America, Inc.*, Civil No. 76–M–437 (D.Colo., May 8, 1976).

## III. STATE LAW VERSUS FEDERAL COMMON LAW: THE SUPREME COURT'S OPINION IN PRIMA PAINT

■ Diversity of the parties is the sole basis of jurisdiction in this suit. Although the parties do not dispute the applicability of the Federal Arbitration Act of 1925, 9 U.S.C. § 1 *et seq.*, since this dispute involves interstate commerce, the Act itself does not create federal question jurisdiction. *Robert*

---

1. "*Twentieth*: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, in New York City, New York, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

 "*Twenty-First*: MR. HAROLD M. GRIFFIN does hereby expressly agree to be bound along with PUBLIC to this Agreement for arbitration and he agrees that he may alone or with PUBLIC be made party to an arbitration proceeding hereunder."

2. "Any controversy or claim arising out of this agreement or the [security] Agreement, or the breach of either, shall be settled by arbitration in accordance with the rules of the American Arbitration Association in New York City, New York, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Guarantor agrees that he may alone or with one or more of the signatories to the [security] Agreement be made a party to any arbitration which may be initiated with respect to the [security] Agreement and/or this guarantee."

*Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 408 (2d Cir. 1959), *petition for cert. dism'd,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960) (hereinafter *Robert Lawrence Co.*). .

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (hereinafter *Prima Paint*), the Supreme Court held that, notwithstanding *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Act creates a basis for federal substantive law under the commerce clause of the Constitution. This Court must therefore look to federal common law for interpretation of the arbitration agreement here in question. *Prima Paint, supra; Gavlik Construction Co. v. H. F. Campbell Co.,* 526 F.2d 777, 785 (3d Cir. 1975).

Essential to this Court's ruling on motions pending before it is an understanding of the Supreme Court's ruling in *Prima Paint.* The defendant had entered into a contract with the plaintiff to provide business consulting services. The agreement provided that:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration . . . ."

388 U.S. at 398, 87 S.Ct. at 1803. Shortly after executing the agreement, the plaintiff accused the defendant of fraudulently representing that it was solvent. The defendant gave notice of its intention to arbitrate, and the plaintiff subsequently filed a diversity suit seeking to rescind the contract and enjoin the arbitration proceedings. The defendant's motion to stay the suit pending arbitration was granted.

In affirming the trial and appellate courts, the Supreme Court held that "the statutory language [of the Federal Arbitration Act] does not permit the federal courts to consider claims of fraud in the inducement of the contract generally." 388 U.S. at 404, 87 S.Ct. at 1806. Only "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement *to arbitrate* —[may] the federal court may proceed to

adjudicate it" (emphasis added). *Id.* The Supreme Court based this substantive federal law of construction on

"the plain meaning of [the Act] . . . [and] the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts."

*Id.*

The dissent attacked the creation of federal common law, not challenged here, and questions of due process raised by the arbitral system. To understand fully the problems inherent in diverting the resolution of legal issues from the court to the arbitrator one need only advert to the vigorous dissent of Justice Black, 388 U.S. at 407–425, 87 S.Ct. 1801, wherein many of the lamentations echoed by plaintiff *sub judice* can be found.

As it applies specifically to the language in the arbitration clause in *Prima Paint,* the Supreme Court's holding is uncontrovertible. This Court concludes that the thrust of that holding, although not entirely beyond dispute, cannot be restricted strictly to the arbitration clause there at issue. The issue phrased by the majority was: "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." 388 U.S. at 402, 87 S.Ct. at 1805. The opinion proceeds to focus on whether state law or federal law should apply to the question of "severability" of the arbitration clause from the rest of the contract, opting for a uniform federal rule of severability. The Supreme Court's unequivocal conclusion that under 9 U.S.C. § 4, the court should not even "consider claims of fraud in the inducement of the contract generally," 388 U.S. at 404, 87 S.Ct. at 1806, taken literally would plainly resolve the present controversy in favor of arbitration. Plaintiff alleges fraud in the inducement of the contract generally.

Plaintiff contends however that "[t]he entire thrust of *Prima Paint* is focused on broad arbitration clauses which include within them an agreement to arbitrate is-

sues of fraud." Plaintiff's brief at 5. This Court disagrees; the central focus in *Prima Paint* was not on the breadth of the language in the arbitration clause, but rather, on the question of severability as it relates to Congress' intent to eliminate judicial delays which impede the efficacy of the arbitration procedure.[3] *Id.*

## IV. ROLE OF THE COURT: ADJUDICATION VERSUS ARBITRATION

A number of possible alternatives in determining the proper role of a court are available when parties have purportedly contracted to arbitrate future disputes. The alternative chosen ultimately is dictated by policy considerations. *See* Section IV.B.1, *infra.* In order to arrive at an appropriate procedure it has been necessary for this Court to consider the following questions:

(1) whether certain issues are beyond the power of the arbitrator regardless of the language of the arbitration clause, since these issues must be determined by the court; and

(2) whether the courts have established presumptions of arbitrability or non-arbitrability with regard to those issues which are within the power of the arbitrator.

The dispute presently before this Court is whether the question of fraudulent inducement of the guaranty agreement should be

**3.** Plaintiff apparently relies on the following sentence to support his interpretation:

"This contractual language is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud." 388 U.S. at 406, 87 S.Ct. at 1807. However, this sentence taken in context with the rest of the paragraph, and indeed, the rest of the opinion, supports the conclusion that an allegation of fraud, unless directed specifically to the arbitration clause itself, as opposed to the contract generally, is "not intended by Congress to delay the granting of a [9 U.S.C.] § 3 stay". 388 U.S. at 407, 87 S.Ct. at 1807. The fact that the language in the arbitration clause was broad enough to evidence the parties' intent to arbitrate questions of fraud in the inducement was merely added reason why the majority thought that the fraud question should be arbitrated and not adjudicated.

resolved by this Court or by an arbitration panel.[4]

### A. Issues Within the Province of Arbitration

In addressing the first question the Court has concluded that there are but two *per se* non-arbitrable issues which merit brief mention in this ruling.[5] The first is whether there ever existed any contractual relationship between the disputing parties. *E. g., Interocean Shipping Co. v. National Shipping and Trading Corp.,* 462 F.2d 673, 676 (2d Cir. 1972) (" 'if it was claimed that . . . there had at no time existed as between the parties any contractual relationship whatever, . . . a trial of this issue would be required before an order could be issued directing the parties to proceed to arbitration' "). *See also Inter'l Union of Operating Engineers v. Carl A. Morse, Inc.,* 529 F.2d 574, 579 (7th Cir. 1976) (hereinafter *Carl A. Morse*).

The second is whether "the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate . . . .," *Prima Paint, supra,* 388 U.S. at 404, 87 S.Ct. at 1806, was induced by fraud.

Plaintiff does not challenge either the existence of a contractual relationship with defendant, or the "making" of the agreement to arbitrate. The Court is of the opinion that the language in *Prima Paint* prohibiting the court from even "con-

In his lengthy dissent Justice Black never once alluded to or otherwise considered the scope of the arbitration clause at issue. 388 U.S. at 407–425, 87 S.Ct. 1801.

**4.** Plaintiff in his complaint also raises issues of failure of consideration and material alterations in the security agreement. He makes no contention, however, that these issues are outside of the scope of the arbitration clause. This ruling is limited strictly to the question of arbitrability.

**5.** The Supreme Court has held it improper to give effect to arbitration clauses if the Securities Exchange Act is involved, *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). *See also Cobb v. Lewis,* 488 F.2d 41 (2d Cir. 1974) (anti-trust claims).

sider[ing] claims of fraud in the inducement of the contract generally," 388 U.S. at 404, 87 S.Ct. at 1806, is sufficient to preclude any scrutiny by this Court of the scope of the arbitration clause in the guaranty agreement, as to whether it includes the issue of fraud in the inducement. *Cf. Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Nothing short of judicial hostility to the arbitration process can support a contrary interpretation of this Supreme Court language in the context of an arm's length, commercial transaction.[6]

This Court has decided to determine the scope of the arbitration clauses here at issue, Section V., *infra*, not because it reads *Prima Paint* to mandate such scrutiny whenever the court is confronted with the cry of fraudulent inducement of the contract as a whole, but rather, to illustrate why this issue, which "seems inextricably enmeshed in the other factual issues of a [contract dispute], . . ." *Robert Lawrence Co., supra*, 271 F.2d at 410, should be presumptively insufficient to justify *any* judicial interruption in the arbitration process.

**B. Judicial Standards for Determining Whether the Agreement Covers the Asserted Dispute**

 Although the question of what issues are arbitrable under the arbitration clause might conceivably be one that is properly determined by the arbitration panel itself, it appears from the cases address-ing this threshold question that the Supreme Court has recognized a presumption favoring the resolution of this question by the court.

> "Where the assertion . . . is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose."

*United Steelworkers of America v. Warrior and Gulf Nav. Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Neither of the arbitration clauses *sub judice* expressly relegates the question of arbitrability to the arbitration panel. Accordingly, the proper forum for determining arbitrability is this Court.

### 1. Policy Considerations

It would be less than candid to suggest that this Court's conclusions, as well as the conclusions of other courts that have addressed the question of arbitrability in similar contexts, are not based in large part on policy considerations. Thus, the judicial labels and conclusions of law which this Court relies upon must be construed in light of these judicially recognized considerations. The enactment of the Federal Arbitration Act in 1925 was intended to override the long standing judicial hostility to arbitration on public policy grounds. *See* H.R.Rep. No.96, 68th Cong., 1st Sess. 1–2 (1924). The Supreme Court's recognition of this con-

---

**6.** Although the parties did not bring this case to the Court's attention, in its search for guidance from the opinions of the Fifth Circuit Court of Appeals, this Court experienced some difficulty reconciling *International Ladies Garment Workers Union v. Ashland Industries, Inc.*, 488 F.2d 641 (5th Cir. 1974), *cert. denied*, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1975), with the Supreme Court's opinion in *Prima Paint*. *See also Carl A. Morse, supra*, 529 F.2d at 579 n. 4. Without considering the question of the scope of the arbitration clause incorporated in a collective bargaining agreement, the Court of Appeals in *Ladies Garment* ruled that fraud in the inducement is a question of law to be determined by the court and not the arbitrator. 488 F.2d at 644. Although there appears to be a

number of cases to this effect, *cf. Inter'l Union of Operating Engineers, Local 139 v. Carl A. Morse, Inc.*, 387 F.Supp. 153, 161 (E.D.Wis. 1975), *aff'd*, 529 F.2d 574 (7th Cir. 1976), it is clear that equitable defenses such as fraud in the inducement are arbitrable at least whenever the relevant arbitration clause is deemed to be sufficiently broad. *Prima Paint, supra; Inter'l Union of Operating Engineers, Local 180, AFL–CIO v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). *See also Carl A. Morse, supra*, 529 F.2d at 580.

This Court has concluded that *Ladies Garment* should not control the present controversy since it does not cite or otherwise refer to either the provisions of the Federal Arbitration Act or *Prima Paint*.

gressional intent in the face of bitter dissent is graphically illustrated by the federalization in diversity cases of contract law as it relates to the severability of arbitration clauses. *Prima Paint, supra.* These policies dictate the degree and manner in which a court should participate in the interpretation of an arbitration clause.

■ The primary consideration recognized by the courts has been the desirability of relative speed and economy of arbitration "not subject to delay and obstruction in the courts." *E. g., Prima Paint, supra,* 388 U.S. at 404, 87 S.Ct. at 1806. This consideration transcends the time and money occasionally wasted on futile arbitration. *See Stateside Machinery Co., Ltd. v. Alperin,* 526 F.2d 480, 484 n. 13 (3d Cir. 1975). *National R.R. Passenger Corp. v. Missouri Pacific R.R. Co.,* 501 F.2d 423, 426 (8th Cir. 1974) (hereinafter *Nat'l R.R.*) *Robert Lawrence Co., supra,* 271 F.2d at 410.

■ The second consideration which has influenced courts to embrace approvingly the resolution of disputes by arbitration is the desirability of "eas[ing] the congestion of the Court dockets." *Southwest Industrial Import and Export, Inc. v. Wilmod Co., Inc.,* 524 F.2d 468, 470 (5th Cir. 1975). *See also Nat'l R.R., supra,* 501 F.2d at 423; *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.,* 427 F.2d 924, 928 (5th Cir. 1970); *Robert Lawrence Co., supra,* 271 F.2d at 410. Furtherance of this objective requires that judicial involvement in piecemeal determinations, whether threshold or otherwise, be strictly minimized.

### 2. The Procedural Scope of Judicial Inquiry

#### a. Procedural Context of the Present Controversy

■ With the foregoing considerations as a backdrop, the Court first must determine the extent to which it should delve into the question of arbitrability. Procedurally the Court presently has pending before it a motion by plaintiff for a temporary restraining order seeking to enjoin the defendant from pursuing arbitration, and defendant has filed a motion to stay the trial of this action pending the completion of such arbitration. Plaintiff has filed a verified amended complaint setting out the basis for his contentions of fraud, along with verified copies of the security and guaranty agreements. In his complaint plaintiff seeks an injunction pending a determination of the merits of his allegations.

The Court has concluded that no function would be served by deferring a ruling on the merits of the question of arbitrability. Indeed, the aforementioned policies would be frustrated by the delay and uncertainty which would necessarily accompany such a procedure.

#### b. "Evidence" Properly Considered by this Court: The Screening Process

■ Plaintiff in his brief adverts to "[an] express deletion of the Standard American Arbitration Association arbitration clause in the Guaranty Agreement, contrary to the insertion of that clause in the predecessor Security Agreement. . . ." Plaintiff's Brief at 4. It is not clear whether plaintiff anticipates an opportunity to present extrinsic evidence as to the intent of the parties. However, it is clear that in determining the scope of an arbitration clause, the role of the court in that review is "distinctly limited." *Nat'l R.R., supra,* 501 F.2d at 427. The Court is of the opinion that its inquiry on this issue should be limited to the face of the verified agreements filed by the plaintiff. *See Nat'l R.R., supra; Galt v. Libby-Owens-Ford Glass Co.,* 376 F.2d 711, 714 (7th Cir. 1967); *IT&T Corp. v. Local 400,* 286 F.2d 329, 330–331 (3d Cir. 1961).

### 3. The Presumption of Arbitrability

■ A presumption of arbitrability applies to the vast majority of issues emanating from a contractual relationship. With the exception of those issues noted earlier, n. 5 and accompanying text, *supra,* whenever the scope of the arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *United*

*Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Georgia Power Co. v. Cimarron Coal Corp.*, 526 F.2d 101 (6th Cir. 1975), *cert. denied*, ⎯ U.S.⎯, 96 S.Ct. 1727, 48 L.Ed.2d 195, 44 U.S.L.W. 3518 (Mar. 8, 1976) (hereinafter *Georgia Power*); *Wells Fargo Bank v. London S.–S. Owners' Mut. Ins.*, 408 F.Supp. 626, 630 (S.D.N.Y.1976); *Singer Co. v. Tappan Corp.*, 403 F.Supp. 322, 329 (D.N.J.1975); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 400 F.Supp. 888, 890 (N.D.Ill. 1975); *Long v. Marion Mfg. Co.*, 402 F.Supp. 69, 75 (D.S.C.1974), *aff'd*, 511 F.2d 1398 (4th Cir. 1975).

██ This presumption of arbitrability applies whether the dispute is one involving labor or commercial transactions. *See Nat'l R.R.*, *supra*, in addition to all of the lower court cases cited above. The weight of this presumption has been characterized as quite ponderous: ". . . . arbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute."[7] *Georgia Power, supra*, 526 F.2d at 106, *citing American Radiator & Standard Sanitary Corp. v. Local 7, Inter'l Brotherhood of Operative Potters, AFL–CIO*, 358 F.2d 455, 458 (6th Cir. 1966). *See also United Steelworkers v. Warrior & Gulf Nav. Co., supra*, 363 U.S. at 582, 80 S.Ct. 1347.

It is unnecessary for this Court to indulge in a consideration of the various labels utilized by the courts in expressing the burden borne by a party challenging the arbitrability of a given issue. The arbitration clause here at issue is sufficiently broad in scope, Section V., *infra*, to render the issue of fraudulent inducement arbitrable with or without the benefit of a presumption. It is enough to note that this presumption exists, and it is entirely consistent with all of the policy considerations set out in Section IV. B.1., *supra*. Indeed, rather than looking to the often obscured expression of intent of the parties to determine whether "fraud in

the inducement" is an arbitrable issue, this Court cannot overly stress the benefits of a universally accepted presumption of arbitrability, to be overcome only by unequivocal language to the contrary.

## V. SCOPE OF THE GUARANTY AND SECURITY AGREEMENT ARBITRATION CLAUSES[8]

### A. The Guaranty Agreement

██ Plaintiff does not dispute that the scope of the arbitration clause in his brother's security agreement is sufficiently broad to encompass the issue of fraud in the inducement. Indeed, the arbitration clause of the security agreement is identical to the precise clause at issue in *Prima Paint, supra*, 388 U.S. at 398, 87 S.Ct. at 1803. Both begin with the words "[a]ny controversy or claim *arising out of or relating to* this Agreement, or the breach thereof . . . ."

Plaintiff premises his contentions of the non-arbitrability of the fraud question on one ground. He argues that the "express" deletion in his guaranty agreement of the words *"or relating to"* from the standard American Arbitration Association clause supports the conclusion that the parties intended to limit arbitration by excluding the issue of, or such issues as "fraudulent inducement." The only authority cited for this proposition is *In Re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961).

In *Kinoshita* the court was confronted with a clause that provided that:

"[i]f any dispute or difference should *arise under* this Charter, same to be referred to three [commercial men] . . . ." (emphasis added)

287 F.2d at 952. This language was held to exclude from arbitration the question of fraud in the inducement. Plaintiff likens this clause to the guaranty clause at bar. However, this argument fails to account for the last sentence of the arbitration clause of the guaranty agreement, which states:

---

7. *See also Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 n. 6 (1st Cir. 1975), which suggests that unless the arbitration

clause sets out express words of limitation, all issues are arbitrable.

8. *See* n. 1 & 2, *supra*.

"Guarantor agrees that he may alone or with one or more of the signatories to the [security] Agreement be made a party to *any arbitration which may be initiated with respect to* the [security] Agreement and/or this Guaranty." (emphasis added) It is inconceivable to this Court in light of this sentence that the deletion of the words "or relating to," if indeed such can be characterized as a deletion, in any way manifests an intent to withhold from arbitration the question of "fraud in the inducement." It is difficult to imagine how plaintiff's agreement to "be made a party to *any arbitration . . . with respect to* the [agreements]" could be much broader without being redundant.

There is no limit to the language used in arbitration clauses to define those issues deemed arbitrable. Defendant cites state court opinions construing these clauses, and this Court has considered a number of federal court decisions which have done likewise. *E. g., Stateside Machinery Co., Ltd. v. Alperin,* 526 F.2d 480, 481 (3d Cir. 1975) (". . . in case of any unresolved issues [this agreement] will be subject to binding arbitration . . . ." Held: fraudulent inducement arbitrable); *Georgia Power, supra,* 526 F.2d at 104, 106 (6th Cir. 1975) ("Any unresolved controversy . . . arising under this Agreement . . . ." Construed: This language "is as broad and general as one can conceive."); *Stokes v. Merrill Lynch, Pierce, Fenner & Smith,* 523 F.2d 433, 435, 437 (6th Cir. 1975) ("Any controversy . . . arising out of . . . ." Construed: "broad language . . . ."); *Robert Lawrence, supra,* 271 F.2d 404, 412 ("Any complaint, controversy, or question which may arise with respect to this contract . . . ." Construed: "It would be hard to imagine an arbitration clause having greater scope . . . ."); *Long v. Marion Mfg. Co.,* 402 F.Supp. 69, 71 (D.S.C.1974), *aff'd,* 511 F.2d 1398 (4th Cir. 1975) ("All disputes . . . as to whether . . . shipments conform to the terms of the sale, except as to quality, or the amount of the allowance or interpretation of any section of these rules, . . . ." Held: Acts of God "well within the scope of the arbitration clause . . . ."); *Mecom v. Palmer,* 384 F.Supp. 1369, 1372 (W.D.La. 1974) ("should any dispute aris[ing] from or out of this agreement . . . ." Held: materially inaccurate representations arbitrable). All justifiable reasons for promoting arbitration, Section IV.B.1., *supra,* are ill-served by this thankless endeavor. Moreover, synthesis of a meaningful rule of construction is impossible; anyone seeking to predict those disputes which may ultimately call for arbitration should not be required to litigate for his answer.

To adopt plaintiff's position this Court would be constrained to ignore the last sentence of plaintiff's agreement to arbitrate, and to limit *Prima Paint* to cases construing clauses containing the words "arising out of or related to." This interpretation would not comport with the interpretation of that opinion as conceived by either the majority or the dissent.

### B. The Security Agreement

In his verified complaint plaintiff maintains and the Court agrees that the security agreement between plaintiff's brother and the defendant was incorporated by reference into the guaranty agreement. Plaintiff's Original Complaint at 5. Although plaintiff was not a signatory to the security agreement, which clearly encompasses fraudulent inducement as an arbitrable issue, *Prima Paint, supra,* there is authority for binding a non-signatory to the terms of an arbitration clause drawn up and agreed upon by other parties. *Compania Espanola de Petroleos S.A. v. Nereus Shipping S.A.,* 527 F.2d 966, 974 (2d Cir. 1975) (". . . duty to arbitrate was indeed one of the rights and obligations which Cepsa, as guarantor, agreed to assume."); *Wells Fargo Bank v. London S.-S. Owner's Mut. Ins.,* 408 F.Supp. 626 (S.D.N.Y.1976); *Vespe Contracting Co. v. Anvan Corp.,* 399 F.Supp. 516, 521 (E.D.Pa.1975); *Inter'l Union of Operating Engineers, Local 139 v. Carl A. Morse, Inc.,* 387 F.Supp. 153, 159 (E.D.Wis.1974), *aff'd,* 529 F.2d 574 (7th Cir. 1976). The breadth of the arbitration clause of the guaranty agreement renders it unnecessary for this Court to decide wheth-

er this relatively recent manifestation of the liberalized policy in favor of arbitration should apply in the present context. It should be noted, however, that an agreement which incorporates another agreement providing for arbitration should spell out in unequivocal terms those provisions or terms expressly excluded. Plaintiff's guaranty agreement fails to do so.

## VI. CONCLUSION

 Whenever confronted with a motion for temporary injunctive relief, this Court preliminarily is disposed to consider whether the plaintiff has satisfied his threshold burden of proving the four general requirements set out by the Fifth Circuit Court of Appeals in *Blackshear Residence Organization v. Romney*, 472 F.2d 1197 (5th Cir. 1973), as follows:

1. Is the plaintiff likely to prevail on the merits?
2. Will the plaintiff suffer irreparable harm if the preliminary injunction is not issued?
3. Whether the potential harm to the defendant on the issuance of a preliminary injunction outweighs the harm to the plaintiff if the preliminary injunction is denied.
4. Whether issuance of a preliminary injunction will serve the public interest.

After giving careful consideration to the applicable cases cited by the parties, however, it became apparent to this Court that equitable considerations do not bear on the question of arbitrability. *Georgia Power, supra*, 526 F.2d at 107.

"The courts are admonished to resist giving weight to an appraisal of the merits of the grievance or to the equities of a particular claim when they are called upon to adjudicate arbitrability. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)."

*Carl A. Morse, supra*, 529 F.2d at 580 (7th Cir. 1976).

Plaintiff has failed to persuade this court on the merits of the question of arbi-trability as it relates to fraud in the inducement. However, the Court has specifically avoided any consideration of the likelihood that plaintiff might ultimately prevail in proving fraud in the inducement. This is a matter wholly committed to arbitral resolution, and nothing that any court may intimate in considering the likelihood of proving fraud should in any way influence the arbitrators' judgment, for it is their judgment which this Court has concluded that the parties bargained for.

Plaintiff's motion for injunctive relief is denied. Pursuant to 9 U.S.C. § 3, defendant's motion to stay this action pending arbitration is granted.